D. M. KELLEHER, Appellee, v. JOINT DRAINAGE DISTRICT No. 18, Greene County et al., Appellants.

No. 41732.

JUNE 20, 1933.

Mitchell & Mitchell, and R. G. Howard, for appellants.

D. M. Kelleher and R. F. Mitchell, for appellee.

KINDIG, C. J.—In the year 1906 a petition was filed for the organization of a joint drainage district, comprising district No. 18,

in Greene county, and district No. 35, in Webster county. After all preliminary steps had been taken, the joint district was organized in the year 1907. As thus organized, the joint district contained about six thousand acres of farm lands.

The district is long and narrow, and extends in a northerly and southerly direction, with an outlet at the south end. When the ditch improvement was finally constructed in the joint district, it consisted partly of a closed tile drain and partly of an open ditch. According to the record, the original cost of the improvement did not exceed $18,364.37. Because of inadequacy of size and construction, the ditch did not properly perform the functions for which it was intended. So, on July 3, 1918, the property owners in the district petitioned for an additional drainage improvement to take care of the insufficiency of the original improvement. An engineer was appointed to make a survey for the new improvement and furnish an estimate of the costs. It was estimated by the engineer that the costs of the additional improvement would be from $50,000 to $57,000. This plan was rejected by the property owners largely because of the excessive costs.

Thus the matter stood until proceedings were again instituted to make another drainage improvement. On this occasion an improvement was finally made. That improvement is the one out of which the present controversy arises. Such improvement was authorized by the joint board of supervisors on May 19, 1927. Mr. S. J. Melson was the engineer in charge. In his report to the joint board, Mr. Melson said:

"While this clean-out work is necessary, no matter what plan is contemplated for relief in this district, and while tributary lands will be affected, it will not, in my opinion, give complete relief to all parts of the district which are now suffering from inadequate outlets. I therefore suggest that some plan to give relief to all should be considered as the cleaning of the open drain will give complete relief to only those adjacent thereto. * * * "

The engineer, as well as the joint board of supervisors, recognized that the original district and its drainage system was designed to carry only an insufficient amount of the water on the lands. So the engineer devised a plan to carry three times more than the amount of water carried by the original system. This new plan of the engineer contemplated an entirely different and substi-

tuted system of drainage. As constructed, the new plan cost from $88,000 to $89,000. When making the new improvement, the joint board of supervisors proceeded under section 7556 of the 1931 Code rather than under section 7554 thereof.

It is claimed by the plaintiff-appellee, D. M. Kelleher, a property owner in the district, that the joint board should have proceeded under section 7554 rather than under section 7556. Therefore it is concluded by the appellee that the joint board did not have jurisdiction to make the improvement, and consequently all the assessments thereunder are invalid. Section 7554 contemplates a notice to the property owners and proceedings the same as in the establishment of the new ditch; while section 7556 does not contemplate a notice to property owners before the repairs are made. On the other hand, the defendant-appellant, the joint board, argues that the improvement was merely a repair and therefore the proceedings were properly had under section 7556 of the 1931 Code.

The appellee filed objections to the assessment by the joint board; whereupon the joint board overruled the objections and levied the assessments. Accordingly the appellee appealed to the district court. That tribunal, when hearing the cause, sustained the appellee's contentions in part and denied them in part; that is to say, the district court held that the proceedings for the part of the improvement substituted for the original closed tile drain should have been made under section 7554 of the 1931 Code rather than under section 7556 thereof. But the district court held that the part of the new improvement made on the open ditch of the original drain was a repair, and therefore properly made under section 7556 of the 1931 Code. No appeal was taken by the appellee, Kelleher; hence no consideration will be given to that part of the ruling of the district court relating to the improvement of the open ditch. An appeal, however, was taken by the appellants, boards, from that part of the ruling of the district court relating to the improvement on the closed drains. Our consideration, then, will be limited to this part of the controversy. Two questions are involved—the one relates to the applicability of the two sections of the statute above mentioned, and the other has to do with waiver, acquiescence, and estoppel.

■ I. Which of the two sections of the aforesaid statutes applies to that part of the improvement relating to the original closed drain? That is the first question.

Section 7554 of the 1931 Code provides:

"If any levee or drainage district or improvement established either by legal proceedings or by private parties shall be insufficient to properly drain all of the lands tributary thereto, the board upon petition as for the establishment of an original levee or drainage district, shall have power to establish a new district covering and including such old district or improvement together with any additional lands deemed necessary. All outstanding indebtedness of the old levee or drainage district shall be assessed only against the lands included therein."

On the other hand, section 7556 of the 1931 Code contains the following provisions:

"When any levee or drainage district shall have been established and the improvement constructed the same shall be at all times under the supervision of the board of supervisors except as otherwise provided for control and management by a board of trustees, and it shall be the duty of the board to keep the same in repair and for that purpose it may cause the ditches, drains, and watercourses thereof to be enlarged, reopened, deepened, widened, straightened or lengthened, or the location changed for better service, or may cause any part thereof to be converted into a closed drain when considered for the best interest of the public, and in connection with said work may construct settling basins. * * * "

Obviously the two sections of the statute do not overlap. The first applies where the second does not. These sections are supplemental, not inconsistent or incongruous. If the work contemplated is a repair, as provided by section 7556, above quoted, then the proceeding shall be without notice. But on the other hand, if the work under consideration is not a repair, but an original construction, as provided in section 7554 of the Code, there must be a notice, and the procedure shall follow accordingly. As before indicated, the engineer, when making his report to the joint board, plainly stated that a repair of the old improvement would not be sufficient. He said an entirely new, different, and substituted construction was necessary. Acting upon that theory, the engineer provided a substituted, as distinguished from a repair, plan. ·

It seems from the record that the old tile line followed the meanderings of a sinuous stream. In Walker v. Joint Drainage

District, 197 Iowa 351, reading on page 359, 197 N. W. 72, 75, we said:

"When it was found impracticable to dig up the old tile and replace them with new, the new tile were laid in a new ditch immediately adjacent to the old one and parallel thereto, and these new tile connected with the old line of tile at each end. This was no more than a restoration of the original line of tile that had become broken, and out of line and practically worthless. It was simply a more efficient and expeditious manner of repairing the old line than to have actually dug it up and replaced it. It also appears to have been less expensive. No new lands are drained. We think that such a method of repair is clearly within the powers of the board of supervisors, under the provisions of section 1989-a21 [now section 7556 of the 1931 Code]."

Manifestly, however, the joint board, in making the new improvement in the case at bar, did not repair the system, but constructed a new tile line which is not adjacent to, or parallel with, the old one. When making the new improvement, the board constructed a tile line three times as large as the original one, in a line not parallel with and meandering as was the original ditch, but straight. The new tile line is twelve hundred feet shorter than the old one. At times the new tile line departs from the line of the old one for distances varying from ten, twenty, to even fifty rods. This new tile line does not follow the lower ground, but is constructed across the higher land, in order to obtain a straight course, a greater fall, and a shorter distance. Other lands are affected by the new system than were served by the original tile line. Three times more volume of water is carried by the new system than is carried by the old. An old inadequate plan was discarded. There was substituted therefor a new and sufficient scheme of improvement.

In his testimony, the engineer plainly stated that he intended the new as a substitution for, and not a repair of, the old tile line. On the appellee's land the new tile line varies a distance of fifty rods from the old tile line. The cost of the new system is many times more than that of the original construction. Frequently during their examination in the district court the engineer and the members of the board frankly confessed that the original construction was inadequate to drain the lands within the district, and that

the new improvement was a substitution therefor, as distinguished from a repair thereof. While the cost of the new improvement is not conclusive in determining whether the work is a repair or not, yet it may be considered on that subject. For instance, it was said in Bloomquist v. Board of Supervisors of Hardin county, 188 Iowa 994, reading on page 1001, 177 N. W. 95, 98:

"Indeed we should be reluctant to hold in any case that an expenditure of 190 per cent of the cost of an original improvement should be deemed a mere repair thereof."

In the case at bar, the cost of the new improvement is more than 190 per cent of the expense of the original work.

When considering the applicability of the two sections of the Code now under consideration, this court said, in Walker v. Joint Drainage District, 197 Iowa 351, supra, reading on pages 354, 355, and 356, 197 N. W. 72, 73:

"The 'repair' that became necessary because of the condition was not a 'repair' of the physical improvement as made upon the land, but it was a 'repair' of the plan of the engineer who designed the original improvement which was adopted by the board of supervisors. In other words, the original plan for the drainage of this tract of land was inadequate and insufficient to do the work. * * * There is no attempt at replacement, or any repair, modification, or change of any kind in the original tile as constructed. As before stated, the thing that is repaired is the plan, and not the constructed system. To repair means 'to restore to a sound or good condition after decay, injury, dilapidation, or partial destruction.' * * * The construction of this new tile drain 2,100 feet in length, some 900 feet distant from the original tile, and nearly parallel thereto, and furnishing drainage for an entirely new area of land not drained by the original tile, is not in any proper sense a 'repair' of the original construction. * * * The word 'repair' is not of sufficient elasticity to permit extension to include work of this character."

The enlarging, reopening, deepening, widening, straightening, lengthening, or the changing of location for better service, contemplated by section 7556, is to be a repair of an existing system and not the substitution of a new and different work therefor. As the board of supervisors did in Walker v. Joint Drainage District, 197

Iowa 351, 197 N. W. 72, supra, the joint board here changed the system because the original plan was inadequate. If the original levee, drainage district, or improvement is insufficient to properly drain the lands, the procedure should be, not under 7556, but under 7554 of the 1931 Code. This is true because it is necessary to establish a new and original levee and drainage district that will be adequate to care for the waters on the land. A new plan, in other words, is necessary under these circumstances. When, then, a new plan is necessary, the procedure should be under section 7554 of the Code, rather than under section 7556. Section 7556 does not contemplate a new plan and a new system, but rather it presupposes the repair of the work under an old plan and an old system. Consequently, because the joint board of supervisors in the case at bar adopted a new plan and a new system, they illegally proceeded under section 7556. They should have proceeded under section 7554 above mentioned. The property owners in the case at bar were entitled to notice, as contemplated by the last-named section. Without such notice, the assessment of the appellee's land was illegal and invalid. Walker v. Joint Drainage District, 197 Iowa 351, 197 N. W. 72, supra; Smith v. Monona, etc., Drainage District, 178 Iowa 823, 160 N. W. 229; Chicago & Northwestern Railway Company v. Board of Supervisors of Harrison County et al., 187 Iowa 402, 172 N. W. 443; Lade v. Board of Supervisors of Hancock County, 183 Iowa 1026, 166 N. W. 586; Meyerholz v. Board of Supervisors of Louisa County, 200 Iowa 237, 204 N. W. 452.

II. But it is said by the appellants that, because of the words and actions of the appellee, and his grantor, he is estopped from questioning the validity of the assessment under consideration. Moreover, it is claimed by the appellants that, because of the action of the appellee and his grantor they acquiesced in the assessment and waived their right to question the legality thereof.

Carl Nordin, a landowner in the district, was a tenant of John Laufersweiler. Laufersweiler at one time owned the appellee's land, which consists of an eighty-acre farm. While Laufersweiler owned the farm, the appellee, as trustee, loaned the owner $3,000 and took a mortgage on the land to secure the same. Later the appellee took over the land by deed to protect the loan. During the time Laufersweiler held title to the land, he is said to have had a conversation with his tenant, Nordin, concerning the drainage system. The following is an excerpt from Nordin's testimony:

"In the course of the conversation, Mr. Laufersweiler complained of not getting any rent off of this eighty, and we had lots of water there, he as well as we did, and he told me he would be willing to sign or do anything that we were willing to do, and it would be all right with him."

This conversation took place before the improvement in question was inaugurated.

It is claimed by the appellants, therefore, that Laufersweiler made Nordin his agent to authorize the improvement under consideration. Obviously, however, there is no merit in this contention. No agency was created, and it does not appear that any property owner or any official acted upon the theory that an agency existed between Laufersweiler and Nordin. For all that appears from Nordin's testimony, Laufersweiler merely expressed his willingness to proceed in a legal way to establish a valid drainage system. There is no acquiescence, waiver, or estoppel at this juncture.

But it is claimed by the appellants that an estoppel, acquiescence, or waiver arises against the appellee himself. This situation arose, the appellants declare, after the appellee obtained title to the land by the aforesaid deed. He received the title sometime in the year 1927. Thereafter, on October 2, 1928, the appellee wrote a letter to the auditors of the two counties affected by the joint drainage district, complaining because the contractor failed to make connections between the tile in the laterals of the old ditch, and the new tile in the new ditch. A formal complaint concerning this matter accompanied the letter. The appellee visited the land a day or two before the letter was written and discovered that the new ditch had been constructed. Apparently the work was practically completed when the appellee visited the land. So, because the tiles in the laterals of the old ditch were not connected with the tile of the new ditch, the complaint was interposed. No response was made to the appellee's complaint. Regardless of the appellee's complaint, the contractor failed to connect the tile as requested. When the remonstrance was made by the appellee, apparently he did not know of the illegal proceedings taken by the joint board of supervisors. In any event, no one was misled. Moreover, no one paid any attention to the appellee's complaint. There was no legal fraud arising out of the appellee's conduct. Neither waiver nor estoppel arise under the circumstances. Lade v. Board of Supervisors

356

of Hancock county, 183 Iowa 1026, supra, reading on pages 1029, 1030, 166 N. W. 586..

If notice had been served on the landowner, as by law required, it would have been given Laufersweiler, the appellee's grantor. Appellee, then, under the circumstances, was not in a position to know whether such notice had or had not been given to the landowner. Under all the facts, it cannot be said that the appellee acquiesced in the action of the board of supervisors, or waived his right to object thereto. Neither can it be said that the appellee, under the circumstances, is estopped from complaining of the illegality in the premises. Lade v. Board of Supervisors, 183 Iowa 1026, 166 N. W. 586, supra; Wingert v. City of Tipton, 134 Iowa 97, 108 N. W. 1035, 111 N. W. 432; Bennett v. City of Emmetsburg, 138 Iowa 67, 115 N. W. 582; Atkinson v. City of Webster City, 177 Iowa 659, 158 N. W. 473.

Wherefore the judgment of the district court should be, and hereby is, affirmed.—Affirmed.

Evans, Stevens, Anderson, Kintzinger, Donegan, and Claussen, JJ., concur.

Mitchell and Albert, JJ., take no part.