M. M. PAYNE, Appellant, v. MISSOURI VALLEY DRAINAGE DISTRICT, Number One, et al., Appellees.

No. 43391.

APRIL 6, 1937.

REHEARING DENIED DECEMBER 17, 1937.

Thornell, Thornell & Nichols, for appellant.

Genung & Genung, for appellees.

Donegan, J.—Missouri Valley Drainage District No. 1 in Fremont County, Iowa, was duly established in 1923. This district includes a total area much larger in extent than the lands involved in this case. The plaintiff, Payne, is the owner of the south half of section 13 in township 68, and this land adjoins the east line of said township and the west line of section 18 in the township to the east thereof. An open drainage ditch, designated as ditch No. 8, which begins more than a mile north of plaintiff's land, extends southward on the center section line through plaintiff's land and for a distance of approximately two miles south thereof, where it opens into an outlet ditch known as ditch No. 6. Another open ditch, designated as ditch No. 10, begins about one mile north of the northeast corner of plaintiff's land, extends southward, parallel with and one half mile east of ditch No. 8, and along the east line of plaintiff's land to a point where its waters are discharged into a settling basin, which covered an area of about 240 acres. The west side of this settling basin extends from a point about midway on the east line of plaintiff's land for approximately three quarters of a mile to the south. The north end of the basin is about half a mile in length, the south end about a quarter of a mile in length, and the east side extended diagonally from the northeast to the southwest. The northern end of ditch No. 10 received the water from a stream known as Cooper Creek, which came from hilly country along the bluffs of the Missouri River some distance to the northeast of where it connected with this ditch. Along the east or southeasterly side of the basin was another open ditch designated as ditch No. 9. Ditch No. 9 began approximately a half a mile northeast of the northeast corner of the settling basin and, about midway from its beginning and the corner of the settling basin, it was joined by two other short open ditches. From that point it extended southwesterly along the east side of the settling basin to the southeast corner thereof, and thence southward and southwesterly to where it opened into ditch No. 6, which was also the outlet from ditch No. 8.

The land in this entire territory is very flat, being practically level from east to west and having an average slope from

north to south of about one foot per mile. As originally constructed, ditch No. 8 carried only such surface water as flowed into it from the lands adjacent thereto and such subsurface water as was carried into it by tiled drainage lines from such lands. Ditch No. 10, one half mile to the east of No. 8, carried the waters from Cooper Creek into the settling basin, where it terminated. The purpose of the settling basin was to retard the flow of the water coming into it through ditch No. 10, so that the silt and sediment which would be held by the waters coming from Cooper Creek in times of flood would be precipitated in the settling basin, and these waters would then flow out, through openings in the east side of the settling basin and some distance above the bottom thereof, into ditch No. 9. Between the time this drainage system was originally constructed and the year 1932, the silt and sediment carried into the settling basin had filled it up to such an extent that it no longer performed the function for which it was constructed. Breaks had also occurred in the retaining dyke on the southeast side of the basin adjoining ditch No. 9, and silt and sediment as well as dirt from the broken dyke had been carried out of the settling basin into ditch No. 9 in such quantities that this ditch had filled up to such an extent that it also was not functioning. With this condition confronting it, the board of trustees of the drainage district began to consider plans for making some other disposition of the waters which came from Cooper Creek through ditch No. 10. The plan adopted was the construction of a new settling basin on the northeast quarter of section 13, with openings into ditch No. 8, through which the water would be carried to the main outlet ditch No. 6, and the cleaning out and deepening of ditch No. 8. This new settling basin was directly north of the east half of plaintiff's land, its east side adjoined the west side of ditch No. 10, and its west side adjoined the east side of ditch No. 8. Before ordering this work and having it done, the board did not go through the proceedings had in the case of the original establishment of drainage ditches. Instead, it considered this work to be repairs, gave no notice to property owners, made no reclassification of the property for the purpose of levying assessments, and was about to levy assessments on the basis of the old apportionment when plaintiff instituted this action.

This action is based on the contention that, in acquiring land for and constructing a new settling basin, and in diverting the

waters from Cooper Creek from ditch No. 10 through the new settling basin and thence into ditch No. 8, the board is not making repairs to the drainage system as originally established, but is doing new work in carrying out a new system of drainage, and that the board has no power to do these things without going through the proceedings as in the case of an original establishment of a drainage system. The plaintiff claims that, if the defendants be allowed to establish and maintain this new settling basin with its outlet into ditch No. 8, the silt and sediment carried in the flood waters from Cooper Creek through the settling basin into ditch No. 8 will cause that ditch to fill up and the tiled drainage system constructed by plaintiff on his land will be rendered worthless and he will be greatly damaged. Plaintiff further alleges that, in connection with the work of establishing said new basin, the defendants have cleaned out said ditch No. 8 and in doing so have taken property belonging to the plaintiff in excess of the property which said drainage district has a right to occupy as right of way for said ditch. Plaintiff asks that the defendants be enjoined from levying any assessments to pay for the work done; that a mandatory injunction issue restraining them from maintaining the said settling basin and outlet into ditch No. 8; that, in case said settling basin is maintained, they be required to construct adequate dykes around it and to cause a new and different outlet from said new settling basin without using ditch No. 8.

The defense set up in the answer is that in acquiring and constructing the new settling basin, in cleaning out ditch No. 8, and in diverting the waters through said settling basin and ditch No. 8, the board was making repairs as provided in section 7556 of the Code; that the cost of such repairs did not exceed 10 per cent of the original cost of the improvement; and that the assessments to be made are under section 7558 and do not require notice or a new classification.

■■■ The first and most important question to be determined in this case is, whether the work done constitutes repairs within the provisions of said section 7556 of the Code. Said section is as follows:

"7556. * * * When any levee or drainage district shall have been established and the improvement constructed the same shall be at all times under the supervision of the board of super-

638

visors except as otherwise provided for control and management by a board of trustees, and it shall be the duty of the board to keep the same in repair and for that purpose it may cause the ditches, drains, and watercourses thereof to be enlarged, reopened, deepened, widened, straightened or lengthened, or the location changed for better service, or may cause any part thereof to be converted into a closed drain when considered for the best interest of the public, and in connection with said work may construct settling basins.''

I. It is claimed by appellant that the construction of a settling basin is no part of the repairs authorized under section 7556; that the only authority the board has to construct a new settling basin is ''in connection with said work''—the specific repairs enumerated in the statute; and that the settling basin involved in this case was not constructed in connection with any such repair work. With this construction of the appellant we cannot agree. The provision for repairs contained in section 7556 undoubtedly had to do with keeping the drainage system in such condition that it would function and perform the service for which it was intended. The power to do this work is not merely a privilege, but the statute imposes on the board the duty to keep the drainage district in repair. In performing this duty of keeping the drainage district in repair, that is, in a condition so that it will function, the board is authorized, not only to do the other specific things mentioned in the section but also to construct settling basins. We think the evidence shows that the very nature of a settling basin is such that it constitutes no more than a temporary arrangement for taking care of the flood waters in a drainage district, and that it was fully understood and contemplated at the time the district was established and the original settling basin constructed that it would only be a matter of a few years until it would be filled and a new settling basin would have to be provided to take its place. Moreover, part of the work done by the board in this case was the cleaning out of ditch No. 8 which had been silted and filled in to a considerable extent. In doing this work, we think the board may be said to have reopened or deepened this ditch and that, in connection therewith, the board was authorized to construct the new settling basin.

II. Appellant contends, however, that the changes

made by the board did not constitute repairs authorized to be made without notice and hearing, because these changes required the taking of additional land, and section 7560 provides that:

"If additional land is required in making such repairs or changes then the same proceedings shall be had as to such additional land as are provided in this chapter for the original establishment of the district and the same rights shall be given all interested parties including the right of appeal from the decision of the board concerning any inclusion of land, damages, apportionment of benefits, and assessment for costs."

■■■ It is the contention of the appellant that additional land was taken from him in cleaning out ditch No. 8, because the dirt taken out of that ditch was distributed outside of the right of way of the ditch through his land. It is also contended that, in constructing the new settling basin, the land upon which it was located was acquired. As to the additional land of the appellant which he alleges was taken in the cleaning out of ditch No. 8, we think it quite apparent from the record that there never was any intention or action on the part of the board to take any other or additional land than that already included in the right of way of said ditch. The evidence shows that the engineer employed by the board set stakes showing the lines of this right of way, and that the contractor was instructed to keep within the limits of the right of way in distributing the dirt taken out of the ditch. If in doing the work of cleaning out the ditch the contractor deposited dirt outside of the right of way, such conduct was not authorized by the board, could have been restrained by proper action, and did not constitute a taking of the land by the board. If any portion of plaintiff's land outside of the right of way of said ditch has been covered or damaged by the manner in which the work of cleaning out said ditch was done, a proper remedy undoubtedly exists to redress such injury. Nor was there such a taking of additional land for the settling basin as required notice to all property owners in the district. Most of the matters found in said sections 7556 to 7560, inclusive, were originally contained in section 1989-a21, Supplement to the Code of 1913. The latter section, after authorizing the making of repairs or change, provided that the cost of such repairs or change should be paid from the drainage fund or by assessing the cost upon the lands in the same pro-

portion that the original cost of construction was levied, ''except where additional right of way is required or additional lands affected thereby, in either of which cases the board shall proceed as hereinbefore provided.'' In the case of Board of Supervisors of Pottawattamie County v. Board of Supervisors of Harrison County, 214 Iowa 655, 681, 241 N. W. 14, 25, this court construed the provision of section 1989-a21 in regard to assessing the cost of additional right of way, ''as hereinbefore provided,'' and said:

''Obviously the legislature does not require that the landowners in the district whose land is not taken by the new right of way shall have notice before such right of way can be taken. Of course, the landowners whose land is actually taken for the new right of way must have notice in order that they may defend and make claim. But the other landowners in the district are not entitled to such notice. Those landowners whose land is not taken for the new right of way have no right to protest or object to the board's action in making the improvements authorized by section 1989-a21 of the aforesaid Supplement.''

We see no valid reason for holding that the taking of additional land, referred to in section 7560, for the making of repairs provided for in section 7556, should be given any different meaning from that given similar provisions in section 1989-a21 of the Supplement to Code of 1913. In our opinion, the only interested parties to whom notice must be given, where additional land is taken for the making of repairs, are the parties whose land is taken.

III. Appellant further contends that the cost of the work done and the changes made in the drainage project will exceed 10 per cent of the original cost of the improvements in the district, and that, to be valid, any assessment on his land must be made as provided in section 7559. Said section is as follows:

''7559. * * * If the cost thereof does exceed ten per cent of the original cost of the improvements in the district, and the nature and/or amount of work proposed differs from mere repairs as defined in section 7561, then the board shall order a new apportionment of, and assessment upon, the lands in the district to be made; and the same proceedings shall be had and the same rules shall be applied as are provided in this chapter

for an original establishment and assessment; and the same right to appeal shall be given to any interested party.''

As we have held that the repairs involved were such as were contemplated in section 7556, the assessment to defray the cost of such repairs should be made under section 7558 on the basis of the old apportionment and without notice, unless the cost of such repairs does exceed 10 per cent of the original cost of the improvement. The evidence shows that the original cost of the establishment and construction of the improvements in the district was $434,000; that the cost of the work done under the order of the board in this case was approximately $3,000; and that the annual rental of the land for the settling basin is $1,200. Appellant contends, however, that, to the actual cost of the work done in making the changes and repairs included in the above total sum of $3,000, there must be added the damage done to the plaintiff's land in depriving it of the benefit of the drainage supplied through ditch No. 8, by the diversion of the waters of Cooper Creek into said ditch; and that, when this sum is added to the actual cost of the work done, the total cost of the changes made will be approximately $68,000. In the view we take of the case, we do not find from the evidence that the lands of plaintiff will be damaged to the extent claimed by him or to any extent. Even if the annual rental for the land covered by the settling basin be added to the cost of the work done, such rentals for a period of thirty years, added to such cost of the work done, would still amount to less than 10 per cent of the original cost of the improvements in the district. As the old basin established in this case had filled up to such an extent that it ceased to function in approximately ten years, and, as the evidence in the case shows that the function of such settling basins in territory such as is here involved is no longer performed after a much shorter period than thirty years, we are unable to see how the cost of the repairs made in this case can be said to exceed 10 per cent of the original cost of the improvements in the district.

IV. It is further contended by appellant that the change made in the disposition of the waters of Cooper Creek through the new basin and ditch No. 8 was more than a mere change in detail or repairs; amounted to a change in the plan of the improvement in this drainage district; and that, if the statutes

here involved, sections 7556 to 7561 inclusive, be construed to authorize the board to assess the cost of same against the plaintiff's property without notice and hearing, such statutes are in violation of the due process of law provisions of both the state and federal constitutions.

■■■ We do not think that the fact that the waters of Cooper Creek are carried to the outlet ditch No. 6 through the new settling basin and ditch No. 8, instead of through some other settling basin and ditch No. 9, necessarily constitutes a change in plan in the improvements in this district. When this district was established it apparently was well understood that one of the difficulties to be encountered was the disposition of the flood waters of Cooper Creek. These waters had to be disposed of in some way, and apparently the best way was to gather them into a ditch and carry them from where they would otherwise spread over the lands here involved, down to the outlet ditch. If these waters were carried directly from the creek through a ditch to the outlet ditch No. 6, the soil and silt carried along with them would soon clog up such ditch and it would be unable to longer carry off these waters. In such a situation it seems that resort to a settling basin to collect the silt and soil from such waters, before discharging them into the ditch by which they would be carried to the outlet ditch No. 6, was the only solution. Ditch No. 10, into which the waters of Cooper Creek were directly discharged, extended south only to the original settling basin. It was not planned or intended to carry these waters down to outlet ditch No. 6. There were only two other means by which these waters might be disposed of, ditch No. 8 and ditch No. 9. We do not think it was ever intended that the waters of Cooper Creek would for all time have to be carried from a settling basin to outlet ditch No. 6 through ditch No. 9. The evidence shows that it was understood that any settling basin constructed at the time that the district was established would probably cease to function in a few years, and that it was contemplated that new settling basins would have to be constructed from time to time. We think the board not only had the power, but was burdened with the duty, to dispose of these waters brought down from Cooper Creek through ditch No. 10, and that, in disposing of them through a settling basin with openings into either ditch No. 8 or ditch No. 9, it was making necessary repairs in the district.

We do not think that the statutes authorizing assessments on the land in the district for such improvement, without notice or hearing, can be said to be unconstitutional. That question was before this court in the case of Breiholz v. Board of Supervisors, 186 Iowa 1147, 1153, 173 N. W. 1, 3, in which we construed a similar provision of section 1989-a21 of the 1913 Supplement to the Code. In sustaining the validity of the statute we said:

"This responsibility [keeping improvements of district in repair] section 1989-a21 places upon the board of supervisors. The duty is one which is continuous, calling for supervision from day to day and month to month, or, in the language of the statute, 'at all times.' The work to be done may involve considerable expense, or it may be a succession of petty repairs, each of which is comparatively inexpensive. To require that in each case the board must advertise the job and seek the lowest bidder would be to hamper and prevent its efficient action, without any corresponding benefit to the public. It is not at all strange that a drainage system, once completed and put to practical use, should develop, here and there, a defect; and if such defect can be remedied or the efficiency of the system be increased by lowering the bottom of the channel at some point, or by widening the cut in another place, the right of the board to which the duty of care and maintenance is committed, to do what ought to be done to that end, ought not to be unreasonably restricted."

That case was carried to the Supreme Court of the United States, and the opinion of that court appears in 257 U. S. 118, 42 S. Ct. 13, 14, 66. L. Ed. 159. After quoting with approval the statement from the opinion of this court, which we have set out above, that court said:

"The provision of the section assailed, that the cost of repairs shall be assessed upon the lands of the district in the same proportion that the original cost was assessed, since it only requires a simple calculation to determine the amount of each assessment when the cost of the improvement is once determined, is a legislative declaration that the lands will be benefited, and that in such case notice and hearing before such a legislative determination is not necessary, is settled by many decisions of this court."

644

In our opinion, none of the statutes authorizing the levy of assessments for such improvements on the basis of the old apportionment, and without notice or hearing, are in violation of constitutional guaranties.

V.   It is claimed that, at the time the district was established, there was an agreement by which the appellant donated the right of way for ditch No. 8 through his land, on condition that the waters of Cooper Creek would never be carried through this ditch.   We do not find that the evidence shows such an agreement.   It is claimed that, if the board is allowed to discharge the waters of Cooper Creek through the settling basin into ditch No. 8, this ditch will be silted up and the openings into this ditch from the tiles that drain plaintiff's land will be obstructed and his land will be greatly damaged.   If the settling basin is so constructed that the flood waters are held in it until the silt and sediment carried by them are precipitated, we think it sufficiently established in the evidence that such waters will carry very little, if any, silt or sediment into the ditch.   Moreover, we cannot assume that the board will not keep said ditch No. 8 sufficiently cleaned out so that it will be able to carry the waters from the settling basin, and so that the tile outlets from plaintiff's land into the ditch will not be closed.

We find no reason for disturbing the decree of the trial court dismissing the appellant's petition, and said decree is, therefore, affirmed.—Affirmed.

RICHARDS, C. J., ANDERSON, KINTZINGER, PARSONS, HAMILTON, and STIGER, JJ., concur.