[1] Reported in 17 N.W.2d 499.
This is a statutory proceeding brought upon the petition of Otto Finseth, George F. Schultz, and Annice Schultz as landowners to have a portion of Branch No. 9 of Judicial Ditch No. 2, Douglas and Todd counties, cleaned out and repaired. The court made an order denying the relief asked for and dismissed the petition. This appeal is from an order denying the motion of petitioners for a new trial.
Judicial Ditch No. 2 was constructed in Douglas and Todd counties in 1909. Petitioners are the owners of lands in Douglas county drained by Branch No. 9. They filed a petition to have a part of Branch No. 9 cleaned out and repaired, pursuant to Minn. St. 1941, §§ 106.48, 106.49, and 106.51
(Mason St. 1927, §§ 6840-53, 6840-54, and 6840-56), and § 106.50 (1940 Supp. § 6840-55). A competent engineer was appointed by the district court to examine such drainage system and make his report to the court. The survey and report of the engineer recommending that the cleaning be done were made and filed, pursuant to statute. A hearing on the report was had on September 24, 1943. Later, the court made its order and dismissed the petition.
The question presented is the right of petitioners to have repaired and cleaned out that portion of the ditch which drains their lands and which has become obstructed by reason of the accumulation of soil and vegetation from 1 to 3 1/2 feet, resulting in the failure of the ditch to accomplish its original purpose. Petitioners claim that, under the applicable statutes, they are entitled to an order of the court directing the repair and cleaning prayed for in their petition.
Insofar as the statutes heretofore referred to are applicable, they read as follows:
"106.48, subd. 1 [6840-53(a)]. The county board * * * shall keep the same [county or judicial drainage system] or such *Page 257 
part thereof as lies within the county in proper repair and free from obstruction in the manner specified in this chapter so as to answer its purpose, and in case there are sufficient funds to the credit of the drainage system to make such repair and the improvement consists of cleaning out and repair only, and does not contemplate any improvement other than of restoring the ditch as nearly as practicable to the same condition as it was when originally constructed, such funds may be expended by the county board for such purpose * * *.
"Subd. 2 [6840-53(b)]. In case there are not sufficient funds to the credit of the drainage system so to be repaired, the county board may pay for the same out of the general revenue fund of the county. To raise the necessary money to reimburse the general revenue fund the county board is hereby authorized to apportion and assess the costs of the repairs upon all lands originally assessed for benefit in proceedings for the construction of the system, this apportionment and assessment to be in the same proportion as was originally assessed for benefits.
* * * * *
"106.49, subd. 1 [6840-54(a)]. Upon the filing of apetition by any party * * *, interested in or affected by a drainage system * * *, therein setting forth that the drainage system, * * * is out of repair or that portions thereof areobstructed, and describing in general terms the nature, extent, and location of the obstruction, * * * and the probable total cost of the repairs, cleaning out, or improvement does not exceed 30 per cent of the original cost of the construction of the ditch, * * * and thereupon, if the cost of making the repairs or removing the obstruction does not exceed 30 per cent of the original cost of construction of the ditch, it shall be the duty of the county board, or the judge of the district court, as the case may be, to appoint a competent engineer to examine the drainage system and to make report thereon to the board or the court, as the case may be.
"Subd. 2 [6840-54(b)]. In all cases where the costs of repairing, cleaning out, or improvement of any ditch heretofore constructed *Page 258 
exceeds the sum of 30 per cent of the original cost of the construction of the ditch, then and in that event no action can be taken by the county board or the judge of the district court, as the case may be, after ascertaining that the proposed expenditure exceeds 30 per cent of the original cost of construction of the ditch until a majority of the property owners owning 51 per cent of the property affected thereby join in the petition for the repair, cleaning out, or improvement, * * *." (Italics supplied.)
Subdivision 6 [subsection (f)] provides for the furnishing of a bond by petitioners.
"106.50[6840-55]. The engineer provided for by section 106.49
shall * * * make report to the board or court, * * * with his recommendations thereon, and he shall submit with his report a map of the drainage system or that portion thereof as isobstructed or otherwise needs improvement or extending and include therein sufficient detail to show the nature and extent of the obstruction and necessary improvements; * * *.
"106.51 [6840-56(a, b)]. Upon the filing of the report of the engineer with the county auditor, or with the clerk of the district court, * * * it shall be the duty of the board or court to make the necessary inquiry to determine the accuracy of the facts set forth and recommended in this report and, if, at this hearing, it shall appear from this report and the evidence presented that the repairs recommended are necessary and the board or court shall so find, and that all the improvement that is necessary is that the drainage system, or some part thereof, needs cleaning out or repairing, the board or court shall make findings and orders accordingly and direct, in the case of county drainage proceedings, the county auditor and the chairman of the county board of the county, or, in the case of judicial proceedings, the auditors of the several counties affected, to proceed and let a contract for the repair of the system, as shown in the engineer's report, * * *.
"[In the case of a judicial system] it shall be the duty of the auditor [of each county affected] to * * * assess the costs of the *Page 259 
repairs against the property benefited in the original drainage proceeding in the same proportion as in the construction of the original system." (Italics supplied.)
The statutory provisions for procedure in matters of this kind have been strictly complied with. A proper petition was filed. A competent engineer was appointed by the court to examine the ditch and make a report. The required bond was filed by petitioners and the engineer. The latter in his report recommended that the ditch be cleaned out. This report was duly filed. A hearing thereon was had pursuant to statute to determine the accuracy of the facts set forth in the engineer's report and recommendations. The total estimated cost of repairing and cleaning out the ditch was $760.24, plus engineer's and attorney's fees and certain disbursements — much less than 30 percent of the original cost of the ditch. The recommendation in the report for the construction of the four culverts was eliminated when petitioners at the hearing withdrew their request for it.
After the hearing, the court found in part as follows:
"During the past several years a portion of said drainage system which lies in Branch No. 9 thereof, and which runs across the lands of the petitioners herein * * * has become obstructed by reason of the accumulation of soil and vegetation in said ditch, in some places to the extent of one (1) foot, in others to the extent of two and one-half (2 1/2) feet, and in still other places to the extent of three and one-half (3 1/2) feet, and as a result of said obstructions, said ditch does not accomplish its original purpose."
The court also found that certain culverts under driveways were not large enough to accommodate the flow of water in times of heavy rainfall, and this condition, in conjunction with the accumulation of soil and vegetation in the ditch, has caused an obstruction in the branch ditch so that it does not accomplish its original purpose. In our opinion, this finding need not be considered in the disposal of the case. The court also found that the original cost of the entire ditch system was $59,295.57 and the *Page 260 
total cost of cleaning out the obstructions in the branch ditch caused by the accumulation of soil and vegetation would be $760.24, plus $181.27 engineer's expense to date, and an estimated $50 additional engineer's expense. The cost of cleaning and repairing the portion of the ditch here involved will be much less than 30 percent of the original cost of construction.
As conclusion of law, the court held that petitioners are not entitled to judgment for cleaning out of the ditch, and dismissed the petition. In its memorandum, the court states:
"The statutes do not contemplate that each separate landowner may, upon his petition, have an obstruction in the ditch in his own land cleaned out and the cost charged against the entire system, providing only that the cost of such cleaning shall not exceed thirty percent of the original cost of constructing the entire system. Nothing in the statute, as I read it, should be so construed. As I construe the statute, the petitioner must direct his petition to the entire drainage system, * * *. If he ask to have only that part running through his own land cleaned out, he must show as a fact that the rest of the system is free from obstruction and not in need of cleaning out, i. e., that the removal of the obstruction from the ditch where it runs through his own land will result in putting the drainage system as an entire system in working order. If it is claimed that such result will follow from a removal of the obstruction complained of, it should be so stated in the petition and fairly established as a fact from the engineer's report and the evidence upon the hearing. It will be observed that the statute throughout refers to 'drainage system.' If this be not the meaning of the law, then each and every one of the one hundred twenty-three landowners could insist upon judgment ordering and directing the county boards to clean out the ditch through his land even though the total cost of cleaning throughout all of the separate tracts might equal or exceed the cost of the original construction, or greatly exceed 30% thereof." *Page 261 
The total length of the ditch system is 39.79 miles. The main ditch is about five miles in length. There are 11 branches. Petitioners own land on Branch No. 9, and their petition calls for the cleaning out of this branch for a distance of almost two miles.
The statutes place a duty on the county board to keep in repair and free from obstruction all state, county, or judicial drainage systems lying within such county. Thus there was a duty to keep this ditch in repair. The statute also provides that any person interested in or affected by a drainage system may file a petition setting forth that such drainage system is out of repair or that portions thereof are obstructed, and ask to have the condition remedied. It would seem clear, therefore, that the petitioners here have the legal right to petition to have obstructions removed from portions of the drainage system. The statutes do not say that the engineer appointed to make a report must cover the whole system in his investigation and report. He is required to submit with his report a map of such drainage system, "or that portion thereof as is obstructed."
Neither does it seem reasonable to require an owner of land on a branch ditch which has become obstructed and, consequently, useless or damaging, to furnish a bond to cover the cost of an engineer to go over the whole system. It would make it practically impossible for any owner on any one of the 11 branches of this system to have obstructions removed if he should be required to show that no other part of the system needed repairing and that the removal of the obstruction in his branch ditch will, as the trial court says, "result in putting the drainage system as an entire system in working order." The obstruction here involved can have no effect on any one of the other ten branches of the system or the main ditch itself. There is no question but that the branch ditch which drains the lands of petitioners is in fact obstructed and in need of a cleaning out. The court so found, and it stated that the obstruction is such that the branch ditch "does not accomplish its original purpose." The court also found that the cost of repair of this branch ditch would be a great deal less than 30 percent of the original cost. The statute is plain that the *Page 262 
cost of cleaning out a ditch shall be assessed against all the property included in the original ditch proceedings and in the same proportion as were the costs in the original construction.
In our opinion, under the law and the findings of fact, the court should direct the auditors of the counties affected to proceed and let a contract for the repair of the ditch system, as shown in the engineer's report. The case is remanded with directions that this be done.
Case remanded with directions.