BURTON B. JERREL et al., appellants, v. BOARD OF SUPERVISORS of Greene County and as Trustees of Drainage District No. 51, appellees.

No. 48802.

(Reported in 73 N.W.2d 766)

DECEMBER 13, 1955.

Harris & Harris, of Jefferson, for appellants.

Reading, Pauley & Hutcheon, and Cudahy & Wilcox, all of Jefferson, for appellees.

OLIVER, C. J.—This is a drainage case. April 13, 1954, the Board of Supervisors of Greene County as Trustees of Drainage District No. 51, adopted a resolution, "that engineer's amended report filed April 10, 1954, in accordance with Writ of Mandamus and Court Order be accepted and placed on file", also that the engineer's plan of improvement as amended is deemed desirable and feasible and such improvements shall be made. This procedure was taken under what is now section 455.135, Code of Iowa, 1954, notice having been given and a hearing had as therein required when the estimated cost of repair or the improvements exceeds a certain percentage of the cost of the district, etc. A majority of the landowners who owned more than 70% of the land filed a remonstrance against the proposed improvements.

Code section 455.34 provides when such a remonstrance is filed, proceedings to *establish* a proposed drainage district shall be dismissed. The objectors contended the proposed improvements required the establishment of a new district under Code section 455.133 and the provisions of section 455.34 were applicable. The trial court dismissed the appeal, adjudging the proposed plan constituted "improvements" under section 455.135 and not the establishment of a new district under section 455.133. From this judgment the objectors, except Burton B. Jerrel, have appealed to this court.

The area of the district is 1758 acres. It was established in 1910. It employs tile drains. The main drain, into which the various lateral drains empty, is about three and one-half miles in length and runs in a southerly direction. The first 700 feet

north of the outlet is an open ditch. The original assessment totaled $21,816 and several reassessments for repairs, etc., aggregated 8% of that figure. The trial court found little repair work had ever been done upon this drain. In 1945 the engineer (Lechner Engineering Company) submitted several optional plans for repairs and improvements. Amendments to this report were made in 1952 and 1954. A 1952 report recommending repairs and improvements estimated to cost $49,980 was not acted upon by the board. Thereafter, a mandamus suit against the board was brought by two landowners.

The judgment entry in that suit recites the two landowners petitioned the board that the tile lines be cleaned and repaired and the drainage restored to its original efficiency and capacity. The suit followed adoption by the board of a resolution that the drain did not function properly, that to replace it, in part, with an open ditch would cost less than to repair it, that this would exceed 50% of the original cost, and that a majority of the landowners owning 70% of the lands had objected to the "repair and/or improvement." The resolution stated the board refused plaintiffs' request because of the cost and the remonstrance.

The board defended the mandamus suit on the theory these matters deprived it of jurisdiction to proceed. (See Code section 455.34.) The board was "aided in its defense by attorneys for landowners who do not intervene." Trial resulted in judgment against the board. December 30, 1953, the writ of mandamus issued, ordering the board to convene and perform its duty to place and keep the drain in repair. Thereupon the board proceeded as hereinbefore outlined and on April 23, 1954, made the order complained of herein.

Engineer Carl Lechner was the only witness in the case at bar. Other evidence consisted of records, reports, etc., from the books and files of the drainage district, the judgment entry in the mandamus suit and stipulations of the parties. The amended plan calls for the extension of the 700-foot open outlet ditch to a point one and one-fourth miles farther north. It would replace tile sections numbered 12 to 17 inclusive. Its capacity would be greater than that of those sections of the old tile main. The upper main and two laterals would empty into a bulkhead

to be constructed at the north end of this new ditch. Above this point a new tile main one and one-fifth miles long would be constructed. This new main would be alongside of and parallel to sections 7 to 11 inclusive of the old main and would be from 3 to 6 inches larger than such sections. Sections 1 to 6 inclusive of the old main would not be changed. There would be no new laterals and no additional land would be drained. All the new main would be. cross connected with the old main and with the laterals.

Without disturbing, repairing or cleaning the old tile main, which, by reason of age and inefficiency would soon cease to function, it was planned to continue it in operation as long as it would furnish any outlet for the laterals. It would be supplemented by the new tile main and open ditch which would operate with it. When the old tile main would no longer function the new tile main and ditch would carry all the load. The tile of the new part of the main, being 3 to 6 inches greater in diameter, would carry more water than the old one would carry if restored to its original capacity.

The estimated cost of the new work was about $40,000. This would be substantially less than the cost of cleaning, adjusting and restoring the tile in the old main. Mr. Lechner testified the original tile main was not consistently designed, that repair and restoration alone would not be sufficient to make it efficient and that from both an economic and drainage standpoint the plan for the open ditch and the installation of the new larger tile was advisable.

Section 455.135, Code of Iowa, 1946 (formerly section 7556, Codes of 1931 to 1939) made it the duty of the board (or trustees) to keep the drainage district in repair, etc.

As amended in 1949 (subsequent amendments are not here material), section 455.135 (now Code of 1954) contains various changes and additional provisions. It provides the board shall keep the district in repair and may do what is necessary to restore or maintain a drainage improvement in its original efficiency or capacity. "If in maintaining and repairing tile lines the board finds from the engineer's report it is more economical to construct a new line than to repair the existing line, such new

line may be considered to be a repair." The fourth paragraph of section 455.135 states, in part:

"When the board determines that improvements, which differ from the repairs referred to in the preceding paragraphs, are necessary or desirable, it may appoint an engineer to make such surveys as seem appropriate to determine the nature and extent of such improvements, and to file a report showing what improvements are recommended and their estimated costs, which report may be amended before final action. Such improvements may include enlarging, reopening, widening, deepening, straightening or lengthening any drain, changing its location or improving or enlarging the outlet for better service; converting all or any part of any drain from an open ditch to a closed drain; installing surface pipe for open ditches; enlarging, altering, or improving pumping plants; leveling spoil banks, or constructing settling basins and intake and outlet ditches therefor."

Morrow v. Harrison County, 245 Iowa 725, 64 N.W.2d 52, considered this statute, as amended in 1949. After citing cases holding the authority of the board under the earlier statute was broad and comprehensive and not limited to what technically would be repairs, the court states the amended statute, authorizing improvements which differ from repairs, is clearly broader than the earlier statute. The decision holds the statute authorized the board, in lieu of cleaning out and straightening an old river channel which carried water south through the district, to construct a new ditch along an east-and-west road, which would send the water to the district outlets in a different but more direct and efficient manner.

In the later case of Johnson v. Monona-Harrison Drainage District, 246 Iowa 537, 552, 68 N.W.2d 517, 526, the court discusses the Morrow case and earlier decisions and again points to the broadened authority conferred upon boards by the amendments to section 455.135. However, the Johnson case holds the extensive project there involved, "falls more nearly within our former classification of repairs."

The foregoing decisions and others recognize the requirement of Code section 455.182 that drainage laws be construed liberally to promote their purpose.

344

Code section 455.135, as amended, provides for repairs and, among other things, that a new tile line may be considered a repair if found more economical to construct than to repair the old. It provides also for "improvements, which differ from repairs." The quoted language marks a substantial change in the statute. It envisages more than the mere restoration of a drainage improvement to its original efficiency or capacity. The statute provides that improvements may include enlarging any drain, changing its location, etc. The legislative differentiation between repairs and improvements is evidenced, also, by the limits fixed for proposed expenditures without notice to landowners, etc. For repairs such notice and a hearing are required only when the estimated cost exceeds 50% of the cost of the district and improvements while, for improvements, notice and a hearing are required when the estimated cost exceeds 25%.

In substance, the plan of appellee board is to construct, through all except the upper part of the district, a new and enlarged main, alongside of the old, the new and old mains to be connected with each other and with the various laterals. Appellants do not assert this plan is uneconomical or is faulty from a drainage engineering standpoint. Nor do they contend the board would not have jurisdiction to repair the old main or to construct a new main of the same size alongside of it. Their complaint is based upon the testimony of the engineer that the design of the original drain was inefficient and the new plan is calculated to make it efficient by increasing its size and capacity. The contention of appellants would lead to the conclusion that drainage engineering faults in the original plan must be corrected, if at all, by the formation of a new drainage district and that although District No. 51 may continue to operate under the original inefficient plan, it may never be made to operate efficiently. We do not agree the statutes should be so construed.

Appellants rely largely upon Kelleher v. Joint Drainage District No. 18, 216 Iowa 348, 249 N.W. 401. It is sufficient to say the doctrine of that case is not applicable because of the substantial changes made in 1949 in Code section 455.135 by chapter 202, Acts of the Fifty-third General Assembly.

The judgment entry of the trial court recites:

"This case is clearly one for procedure under paragraph four of new Section 455.135 for we have a clear case of 'improvements' which differ from restoring the drain to original capacity or efficiency."

Accordingly it was adjudged that the appeal be dismissed. We concur in the reasoning and conclusion of the distinguished trial court.

Other propositions presented by the parties need not be determined.—Affirmed.

All JUSTICES concur.