THEODORE E. THOMPSON et al., appellees, v. JOINT DRAINAGE DISTRICT No. 3-11 (Kossuth and Winnebago Counties) et al., appellants.

No. 52008.

JUNE 14, 1966.

REHEARING DENIED SEPTEMBER 19, 1966.

Weible & Stipp and R. C. Brown, all of Forest City, and Gordon L. Winkel, of Algona, for appellants.

Fitzgibbons & Fitzgibbons, of Estherville, for appellees.

BECKER, J.—This is an action to cancel levy of assessments for work done on a portion of a drainage district and to enjoin the collection thereof. From judgment in favor of the plaintiffs enjoining the collection of the levy and assessments, defendants appeal.

The Winnebago-Kossuth Joint Drainage District No. 3-11 is located partly in each of the two named counties and services many thousands of acres of land. The district, organized in about 1905, presently includes 11 named and numbered laterals and numerous numbered drainage districts all extending from the main ditch which services the entire district. We are particularly concerned with lateral 8 and also with Drainage District No. 22 (hereinafter referred to as DD#22) which flows into the upper bend of lateral 8, all entirely within Winnebago County. Plaintiffs are landowners in lateral 8.

The original cost of Joint District No. 3-11 was $101,561 of which sum the amount of $97,753 was apportioned to Winnebago County District No. 3. In the years 1947 and 1948 extensive improvements were made in the district. All lands in the joint district were reclassified in 1949. Total cost of these improvements to the entire joint drainage district was $175,545. The total cost of the improvements to lateral 8 and DD#22, excluding the cost of the main ditch was as follows:

Lat. 8 lands,

| | | |
|---|---|---|
| direct | $25,553.00 | 86.6189% |
| Sub 1 | 520.00 | 1.7627% |
| DD #22 | 1,395.00 | 4.7287% |
| DD #29 | 2,032.50 | 6.8897% |
| | 29,500.50 | 100.0000% |

For purposes of this opinion the term subdistrict and drainage district will be treated as synonymous. When referring to

the entire district the term joint drainage district is used.

In September 1960 proceedings were commenced to make repairs or improvements or both in lateral 8 and in DD#22. These proceedings culminated in the extensive work in the upper end of lateral 8 and in DD#22. The nature of the work is not disclosed by the evidence other than lateral 8 was cleaned out and deepened at its upper end and additional tile added, some of which extended into DD#22. There is no indication whether the work constituted a repair or an improvement or a combination thereof. However, both counsel have proceeded on the theory that this is immaterial because of the percentages and amounts involved.

The work on lateral 8 and DD#22 was completed in 1962, and on December 31, 1963, assessments were levied as follows:
Lat 8 lands,

| | | |
|---|---|---|
| direct | $21,481.49 | 86.6189% |
| Sub 1 | 437.15 | 1.7627% |
| DD #22 | 1,172.72 | 4.7287% |
| DD #29 | 1,708.64 | 6.8897% |
| | 24,800.00 | 100.0000% |

Hearing was not held on the matter of making such repairs or improvements and notices provided in sections 455.20 to 455.24, Code, 1962, were not given to the plaintiffs.

Plaintiffs contend that they were entitled to notice and that notice not having been given, the assessments levied against their lands for repairs and improvements are void.

If the percentage limitations are to be applied to the *entire district*, plaintiffs must fail. If they are to be applied to the *lateral and drainage district affected* (the property owners of which will pay the whole bill through assessments), plaintiffs must prevail. Plaintiffs raise other matters which will be noted only incidentally as this case turns on the foregoing contention.

I. Section 455.135, paragraph 1, Code, 1962, reads in part as follows:

"Provided, however, if the estimated cost of repair exceeds fifty percent of the original total cost of the district and subsequent improvements therein as defined in this section, the board shall set a date for a hearing on the matter of making such

repairs, and shall give notice as provided in sections 455.20 to 455.24, inclusive."

Section 455.135, paragraph 4, provides further as follows:

"If the estimated cost of the improvements does not exceed twenty-five percent of the original cost of the district and subsequent improvements therein as defined in this section, the board may order the work done without notice. The board shall not divide proposed improvements into separate programs in order to avoid the twenty-five percent limitation herein fixed for making improvements without notice. If the board deems it desirable to make improvements where the estimated cost exceeds twenty-five percent of the original total cost of the district and subsequent improvements therein as defined in this section, it shall set a date for a hearing on the matter of constructing such improvements and also on the matter of whether there shall be a reclassification of benefits for the cost of such improvements, and shall give notice as provided in sections 455.20 to 455.24, inclusive."

Section 455.48 provides that the assessment of benefits and apportionment of costs of constructing lateral ditches in the first instance are on the same basis as if each lateral was constructed as a subdistrict, and there must be reported separately the percentage of benefits and the amount accruing to each forty-acre tract or less on account of the construction of such lateral improvement.

Defendants' position would allow the board of supervisors to cause *repairs* to be made in a single subdistrict or a single lateral to the amount of at least $138,553 (½ the original cost plus ½ the cost of improvement of the entire joint drainage district). This position would allow the board to cause *improvements* to be made in a subdistrict or a lateral to the amount of at least $69,276 (¼ the original cost plus improvements of the entire joint drainage district); all without hearing or notice. Assessments to these amounts are said to be legal even though the entire amounts would be levied against property which in this case bore a provable cost of initial construction and improvements of only $29,500.

We should note at this point that the defendants state that

they are unable to prove the share of the initial cost which is allocable to lateral 8 and DD#22 for the reason that no such allocation was made (or preserved) in 1904 when the original work was performed. In this case, at least, it does not appear that the added basis would affect the result. In any event the individual property owner cannot be penalized for the district's failure to keep records. This allocation is unnecessary under defendants' theory but is a limiting factor under plaintiffs' theory. We speak hereinafter of provable original cost and provable cost of improvements.

Plaintiffs contend that repairs made without notice must be limited to $14,750 (½ the original cost plus improvement of the lateral and drainage district involved) and improvements made without notice must be limited to $7375 (¼ the original cost plus improvements of the lateral and drainage district involved).

The cost of the work in controversy here was $24,800 which was less than 9 percent of the initial cost plus improvements of the entire joint drainage district but about 86 percent of the initial cost plus improvements allocable to the land to be assessed. The reason for agreeing that the question of repairs or improvements is immaterial is obvious; the use of 25 percent or 50 percent as a factor makes no difference regardless of the contention accepted.

II. Section 455.136 provides that cost of repairs shall be levied against the property of the *district*. No distinction was made in that section as to repairs limited to a specific lateral, drainage district or subdistrict. In Kerr v. Chilton, 249 Iowa 1159, 91 N.W.2d 579, the trustees proposed to levy assessments against the entire district for repairs limited to a specific lateral within the district. We said that such action was illegal. The levy must be limited to the lands originally assessed for construction of laterals (and benefited thereby). The effect of the holding there was to so construe section 455.136 as to limit the assessment to the lateral or subdistrict affected even though the term *district* is twice used and *subdistrict* or *lateral* does not appear in the section 455.136.

Here the trial court's excellent decree held that it would be inconsistent to limit the term district to subdistrict in section

455.136 (for purpose of assessments) and not to so limit the same term in section 455.135 (for purpose of determining the necessity of hearing and notice of proceedings which will eventually result in assessments). We agree.

III. Initially section 455.135 allowed repairs to be made and assessments to be levied in unlimited amounts. This resulted in considerable litigation involving the question of whether the work done was a repair or an improvement. One of the pertinent factors was the relative cost of the work as compared to the original cost of the project. A constant complaint in most such cases was failure to hold a hearing and give notice. See Haugen v. Humboldt-Kossuth Joint Drainage District, 231 Iowa 288, 1 N.W.2d 242 (for legislative review pertinent to this problem), McGuire v. Voight, 242 Iowa 1106, 49 N.W.2d 472, Payne v. Missouri Valley Drainage District No. 1, 223 Iowa 634, 272 N.W. 618; see also 12 Drake Law Review 1, Special Assessments, at page 14, footnote 75, where it is said:

"Under Iowa Code section 455.135 (1962), repairs and revisions of an operating drainage system do not need notice, *unless substantial in cost.* See Kerr v. Chilton, 249 Iowa 1159, 91 N.W.2d 579 (1958) ; Jerrel v. Board of Supervisors, 247 Iowa 339, 73 N.W.2d 766 (1955). At one time, before the present statute was adopted, notice was unnecessary if the work could be characterized as 'repair' rather than 'new construction'; the Court faced several difficult characterization problems:" cases cited, (emphasis added.)

The Law Review author's reaction to the legislative intent is embodied in the phrase "where substantial in costs." This would be a normal common interpretation of the intent of the amendment. Our specific question is "Substantial as to what?" Substantial as to the entire district (where only a part thereof is to be assessed) may be far more than substantial, it may be abusive. Substantial as to the area to be benefited and assessed provides, under the formula decreed by the legislature, a reasonable brake on the power of the governing body to act without hearing or notice.

██ We do not believe it reasonable to hold that the amendments alluded to were meant to be construed in such fashion that property owners could be assessed an amount which is two,

three, four or five times the amount of their original assessment (plus improvement assessments) for work undertaken without hearing or notice. Yet this is the effect of a literal interpretation of the statute. As the trial court noted, the larger the entire district and the smaller the subdistrict or lateral concerned the more freedom the board would have to act without hearing or notice. The requirement of hearing and notice is a safeguard to the individual taxpayer and property owner. The statute must be construed in relation to his right to be informed and to object. Therefore, the relationship of old cost to new costs must be interpreted in the light of costs to the area to be assessed. Otherwise the limitation becomes meaningless and the requirements of section 455.48 have no apparent effect or use.

 "An ambiguity justifying the interpretation of a statute, is not simply that arising from the meaning of particular words, but includes such as may arise in respect to the general scope and meaning of a statute when all its provisions are examined. * * * There is also authority for the rule that uncertainty as to the meaning of a statute may arise from the fact that giving a literal interpretation to the words would lead to such unreasonable, unjust, impracticable, or absurd consequences as to compel a conviction that they could not have been intended by the legislature." 50 Am. Jur., Statutes, section 226.

"The duty devolves on the court to ascertain the true meaning where the language of a statute is of doubtful meaning, or where an adherence to the strict letter would lead to injustice, absurdity, or contradictory provisions." 82 C. J. S., Statutes, section 322b (3). See Chicago, Burlington & Quincy Railroad Co. v. Iowa State Tax Commission, 259 Iowa 178, 142 N.W.2d 407.

IV. Plaintiffs contend that failure to so interpret section 455.135 would void the section as violative of due process. We need not, and do not, pass on the constitutional question other than to observe that a statute will be construed, if fairly possible, so as to avoid doubt as to its constitutionality. Kerr v. Chilton, supra.

V. Defendants argue that the interpretation given this statute will unduly hamper the appropriate board in its manda-

tory duty to keep the drainage facilities in repair. This holding does not prohibit the expenditure of funds for repair or for improvement after hearing and notice. It preserves to the taxpayer the right to be heard and object when the anticipated sums become substantial as to him. It is the affected taxpayer who is entitled to the notice.

Defendants raise the question of oppressive costs in giving notice.

" 'Obviously the legislature does not require that the landowners in the district whose land is not taken by the new right of way shall have notice before such right of way can be taken. Of course, the landowners whose land is actually taken for the new right of way must have notice in order that they may defend and make claim. But the other landowners in the district are not entitled to such notice. Those landowners whose land is not taken for the new right of way have no right to protest or object to the board's action in making the improvements authorized by section 1989-a21 of the aforesaid Supplement.'

"* * * In our opinion, the only interested parties to whom notice must be given, where additional land is taken for the making of repairs, are the parties whose land is taken." Payne v. Missouri Valley Drainage District No. 1, 223 Iowa 634, 640, 272 N.W. 618. See Johnson v. Monona-Harrison Drainage District, 246 Iowa 537, 551, 68 N.W.2d 517.

Ordinarily notice need be given only to the affected parties. If it is felt that the statute is not clear on that point, the appropriate clarification can be sought by legislative action.

It is noted that Payne v. Missouri Valley Drainage District No. 1, supra, involved repairs and the 10 percent limitation under what is now section 455.138. However, it was decided in 1937 before the amendment to section 455.135 which is primarily involved here. We do not consider the holdings in that case in relation to the interpretation of the word district to be controlling in light of the 1949 and subsequent amendments. In re Judicial Ditch No. 2, 219 Minn. 255, 17 N.W.2d 499, involves a different statute with a different history.

It would unduly extend this opinion to further consider additional sections of chapter 455 to reconcile this interpretation

with the intent of the legislature. We are satisfied that percentages imposed by the amendments to section 455.135 relate to costs to the area to be assessed. Hence, hearing and notice were required. Failure to provide hearing and give notice as required by statute voids the entire assessment. Kelleher v. Joint Drainage District, 216 Iowa 348, 249 N.W. 401.—Affirmed.

All JUSTICES concur except JUSTICE MASON who takes no part.