**STATE of Iowa, Appellant,**

v.

**Patricia Grace GREEN, Appellee.**

**No. 90–1545.**

Supreme Court of Iowa.

May 15, 1991.

Bonnie J. Campbell, Atty. Gen., David A. Ferree, Acting Sp. Asst. Atty. Gen., Mark Hunacek, Asst. Atty. Gen., and Timothy R. Palmer, Asst. County Atty., for appellant.

Linda Del Gallo, State Appellate Defender, and Brian K. Sissel, Asst. State Appellate Defender, for appellee.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, LAVORATO, and ANDREASEN, JJ.

LAVORATO, Justice.

Under our implied consent law, must a peace officer make a written request for withdrawal of a body specimen when the person to be tested is incapable of consenting to or refusing chemical testing? The district court thought so and suppressed the results of a blood test because the officer did not make such a request. We reverse and remand for further proceedings consistent with this opinion.

Patricia Green was injured in a one-car accident. She was driving the car at the time. She was taken to the hospital because of her injuries. There a highway patrol trooper orally requested Green's treating doctor to withdraw a blood sample for a blood alcohol analysis. The doctor certified in writing that Green was incapable of consenting to or refusing chemical testing. The doctor then withdrew a blood

sample that tested out at .181. Under our implied consent law the legal limit is .10. *See* Iowa Code §§ 321J.1, 321J.6 (1989).

Green was charged with operating while intoxicated. *See* Iowa Code § 321J.2. Later she moved to suppress the results of the blood test on several grounds. The district court suppressed the blood test results on one of these grounds. The court ruled that our implied consent law had been violated because the trooper did not make a written request for a blood sample pursuant to Iowa Code section 321J.6(1).

The State sought our permission for discretionary review of the ruling, which we granted. *See* Iowa R.App.P. 201.

■ The State relies on Iowa Code section 321J.7. Under that statute, the State insists no written request for a chemical test is necessary when the person to be tested is incapable of consenting to or refusing chemical testing.

Under section 321J.6(1) a peace officer who has reasonable cause to believe that a person was operating a motor vehicle while intoxicated may invoke the implied consent procedure after arresting the person on that charge. To invoke the procedure the officer must request, in writing, that the person submit to chemical testing. The question here is whether such a written request is necessary when the person is incapable of consenting to or refusing the test. To answer this question we must construe and harmonize Iowa Code sections 321J.6(1), 321J.7, and 321J.8.

The three sections pertinently provide:

**321J.6 Implied consent to test.**

1. A person who operates a motor vehicle in this state under circumstances which give reasonable grounds to believe that the person has been operating a motor vehicle in violation of section 321J.2 is deemed to have given consent to the withdrawal of specimens of the person's blood, breath, or urine and to a chemical test or tests of the specimens for the purpose of determining the alcohol concentration or presence of drugs, subject to this section. *The withdrawal of the body substances and the test or*

*tests shall be administered at the written request of a peace officer having reasonable grounds to believe that the person was operating a motor vehicle in violation of section 321J.2, and if any of the following conditions exist:*

*. . . .*

*b. The person has been involved in a motor vehicle accident or collision resulting in personal injury or death.*

**321J.7 Dead or unconscious persons.**

A person who is dead, unconscious, or otherwise in a condition rendering the person incapable of consent or refusal is deemed not to have withdrawn the consent provided by section 321J.6, and the test may be given if a licensed physician certifies in advance of the test that the person is dead, unconscious, or otherwise in a condition rendering that person incapable of consent or refusal.

**321J.8 Statement of officer.**

A person who has been requested to submit to a chemical test shall be advised by a peace officer of the following:

1. If the person refuses to submit to the test, the person's license or operating privilege will be revoked by the department for the applicable period under section 321J.9.

2. If the person submits to the test and the results indicate an alcohol concentration as defined in section 321J.1 of .10 or more, the person's license or operating privilege will be revoked by the department for the applicable period under section 321J.12.

*This section does not apply in any case involving a person described in section 321J.7.*

(Emphasis added.)

Section 321J.8 requires a peace officer to inform a person of the consequences of a test result over .10 or a test refusal. The last paragraph of this section makes an exception in the case of persons described in section 321J.7. In other words, such a disclosure is unnecessary when the person is dead, unconscious, or incapable of consenting or refusing. Section 321J.6(1) makes no similar exception to the written request requirement. Does the absence of

such an exception in section 321J.6(1) mean that the legislature intended a written request even though the person was incapable of consenting to or refusing chemical testing?

In answering this question we turn to familiar principles of statutory construction. In construing a statute we try to find and give effect to legislative intent. *State v. Foster*, 356 N.W.2d 548, 550 (Iowa 1984). We do not resort to rules of statutory construction when the terms of the statute are unambiguous. *Casteel v. Iowa Dep't of Transp.*, 395 N.W.2d 896, 898 (Iowa 1986). Ambiguity exists if reasonable minds may differ or may be uncertain as to the meaning of the statute. *State v. Schlemme*, 301 N.W.2d 721, 723 (Iowa 1981).

Here section 321J.6(1) plainly requires a written request to withdraw a body substance and administer testing. But reasonable minds may differ or may be uncertain about what this statute means when a person is incapable of consenting or refusing. To that extent we think an ambiguity exists.

To resolve the ambiguity and ultimately determine legislative intent, we consider (1) the language of the statute; (2) the objects sought to be accomplished; (3) the evils sought to be remedied; and (4) a reasonable construction that will effectuate the statute's purpose rather than one that will defeat it. *Schlemme*, 301 N.W.2d at 723. In addition, we construe a statute to avoid absurd results even when a literal interpretation would yield a contrary result. *See State v. Alexander*, 463 N.W.2d 421, 422 (Iowa 1990).

The underlying purpose of our implied consent law is to prevent highway deaths due to intoxicated drivers. *Schlemme*, 301 N.W.2d at 723. A remedial statute, like our implied consent law, should be liberally construed consistent with its statutory purpose. *See Probasco v. Iowa Civil Rights Comm'n*, 420 N.W.2d 432, 435 (Iowa 1988).

The written request requirement is one of the procedural safeguards included in our implied consent law. The requirement's primary purpose is to provide a contemporaneous record of the relevant communication. This promotes accuracy and furnishes a record for subsequent review. *See Henry v. Iowa Dep't of Transp.*, 426 N.W.2d 383, 387 (Iowa 1988); *State v. Meissner*, 315 N.W.2d 738, 741 (Iowa 1982). We have not hesitated to disallow evidence of test results where this purpose has been frustrated. *See, e.g., State v. Richards*, 229 N.W.2d 229, 233 (Iowa 1975) (a written request that follows a test is untimely and does not comply with the implied consent statute; test results are therefore inadmissible). However, when the purpose of the requirement has been substantially met, we have allowed such evidence. *See, e.g., Meissner*, 315 N.W.2d at 740 (written request need not be physically handed to the person to be tested; it is sufficient that the officer reads from the written request).

No useful purpose is served by requiring literal compliance with the written request requirement when the person sought to be tested is incapable of consenting or refusing. In these circumstances all we would have would be the officer's request and no meaningful response from the person to be tested.

One court used similar reasoning in applying a "useless act" exception under an implied consent statute. *See State v. Barefield*, 110 Wash.2d 728, 756 P.2d 731 (1988). Under its implied consent law, the state of Washington requires a peace officer to inform the person sought to be tested of the person's right to refuse and the right to have additional tests at the person's choosing. The court held that when such a person is in no condition to comprehend the officer's statements, giving the warning would be a useless act. The court concluded the test results were therefore admissible. *Id.* at 736–37, 756 P.2d at 736.

In our view the physician's certificate in advance of the test that the person is incapable of consenting or refusing provides the necessary contemporaneous record of what happened. In addition, the certificate given by an independent professional also

serves to ensure the accuracy of the record.

We hold that a peace officer may forego the written request requirement of section 321J.6(1) in any case involving a person described in section 321J.7. Test results are not rendered inadmissible if the officer follows the procedure in section 321J.7. Our holding not only provides the necessary procedural protection, but it also promotes the underlying purpose of our implied consent law.

Here a physician certified in writing in advance of the test that Green was incapable of consenting to or refusing chemical testing. In these circumstances the peace officer appropriately dispensed with the written request requirement of section 321J.6(1). So the test results were not rendered inadmissible for that reason. The district court's contrary ruling was error. Accordingly, we reverse the district court's order that sustained the motion to suppress, and we remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.