HOLIDAY INNS FRANCHISING, INC.,
and Holiday Inns, Inc., Plaintiffs,

v.

Terry BRANSTAD, John Q. Hammons,
and Omaha Hotel, Inc.,
Defendants,

Iowa Franchisee Association, Intervenor.

No. 94–954.

Supreme Court of Iowa.

Sept. 20, 1995.

John G. Parker, Ronald T. Coleman, and Kim M. Shipley of Paul, Hastings, Janafsky & Walker, Atlanta, Georgia, and Edward W. Remsburg of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for plaintiffs.

Thomas J. Miller, Attorney General, Gordon E. Allen, Deputy Attorney General and Mark Hunacek, Assistant Attorney General, for defendant Terry Branstad.

Brent R. Appel and David S. Steward of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for intervenor.

Considered by HARRIS, P.J., and LARSON, CARTER, LAVORATO, and SNELL, JJ.

SNELL, Justice.

This case is considered pursuant to the Uniform Certification of Questions of Law Act, Iowa Code chapter 684A (1993). The United States District Court for the South-ern District of Iowa has certified to us questions of Iowa law which we now address.

I. Factual Background

The Iowa Franchise Act took effect on July 1, 1992. On July 2, 1992, Holiday Inns Franchising, Inc. and Holiday Inns, Inc. (collectively "Holiday Inns") filed suit in the United States District Court for the Southern District of Iowa challenging the act on numerous grounds. McDonald's Corporation brought a separate action in the same court which challenged the act and named as defendants two McDonald's franchisees operating McDonald's restaurants in Iowa. Holiday Inns' complaint sought a declaratory judgment on the following grounds: (1) the act violates the United States and Iowa Constitutions because it impairs Holiday Inns' existing contracts with its Iowa franchisees; (2) the act violates the commerce clause by discriminating against and unduly burdening interstate commerce; (3) the act is unconstitutionally vague in its prohibitions and applications; (4) the act otherwise violates federal and state due process and equal protection clauses; and (5) the act constitutes an impermissible special law.

Holiday Inns' petition named three defendants: Terry Branstad, the current governor of the State of Iowa, and two franchisees, John Q. Hammons, and Omaha Hotel, Inc. Hammons operates a hotel in West Des Moines, Iowa pursuant to a Holiday Inn licensing agreement. Omaha Hotel, a Kansas corporation with its principal place of business in Kansas, holds Holiday Inn licenses for two hotels: one in Council Bluffs, Iowa and the other in Davenport, Iowa. Holiday Inns named Governor Branstad as a defendant in his capacity as representative of the State of Iowa.

Holiday Inns' complaint alleged standing to bring this action on the ground it faces immediate monetary damages due to the defendants' impending enforcement of the act. The State of Iowa intervened in the McDonald's action in order to defend the constitutionality of the act and the Iowa Franchisee Association intervened in both actions for the same purpose.

Holiday Inns and McDonald's each filed separate motions for partial summary judgment challenging the application of the act to pre-existing contracts. The federal district court ruled on both motions simultaneously. The court granted the plaintiffs' motions and held the application of certain portions of the act to pre-existing contracts would substantially impair both plaintiffs' contractual rights in violation of the Contract Clauses of the United States and Iowa Constitutions. *McDonald's Corp. v. Nelson,* 822 F.Supp. 597, 607 (S.D.Iowa 1993), *aff'd, Holiday Inns Franchising, Inc. v. Branstad,* 29 F.3d 383 (8th Cir.), *cert. denied, Iowa v. Holiday Inns Franchising, Inc.,* —— U.S. ——, 115 S.Ct. 613, 130 L.Ed.2d 522 (1994).

Holiday Inns subsequently filed a second motion for partial summary judgment which challenged prospective application of the act. In this motion, Holiday Inns asserted that the act violates the Commerce Clause of the United States Constitution for two reasons: (1) the act's applicability clause discriminates on its face against interstate commerce because it expressly excludes the dealings of Iowa franchisors with out of state franchisees; and (2) the act's encroachment provisions have the practical effect of regulating commerce in states other than Iowa. In addition, Holiday Inns contended the act's encroachment provision was unconstitutionally vague.

The State of Iowa and the Iowa Franchisee Association resisted Holiday Inns' motion and each entered cross-motions for partial summary judgment. The State and the association argued the act is constitutional and Holiday Inns' position represented a misinterpretation of the act. In ruling on both sides' motions, the district court rejected Holiday Inns' vagueness arguments. The court determined, however, Holiday Inns' Commerce Clause challenges involved questions of Iowa law on which Iowa appellate courts have not previously ruled. The federal court therefore, on its own motion, certified to this court two questions of state law pursuant to Iowa Code chapter 684A (1993), and Local Rule 23 of the Local Rules of the United States District Court for the North-

ern and Southern Districts of Iowa. The certified questions are as follows:

(1) Does the last sentence of Iowa Code section 523H.2 mean that an Iowa franchisor, when dealing with an out-of-state franchisee who operates a franchise within Iowa, need not comply with Iowa Code chapter 523H?

(2) Does the first sentence of section 523H.6(1) apply to a franchisor who seeks to establish "a new outlet, company-owned store, or carry-out store" located in a state other than Iowa but within an "unreasonable proximity of an existing franchisee" located in Iowa?

II. Scope of Iowa Code Section 523H.2

■ Iowa Code section 523H.2 (1993), "Applicability," provides:

This chapter applies to a new or existing franchise that is operated in the state of Iowa. For purposes of this chapter, the franchise is operated in this state only if the premises from which the franchise is operated is physically located in this state. For purposes of this chapter, a franchise including marketing rights in or to this state, is deemed to be operated in this state only if the franchisee's principal business office is physically located in this state. This chapter does not apply to a franchise solely because an agreement relating to the franchise provides that the agreement is subject to or governed by the laws of this state. *The provisions of this chapter do not apply to any existing or future contracts between Iowa franchisors and out-of-state franchisees.*

(Emphasis added.) Holiday Inns argues the last sentence of section 523H.2 unambiguously means an Iowa franchisor need not comply with the act's provisions when it deals with an out of state franchisee, even if the out of state franchisee is operating a franchise located within the state of Iowa. Holiday Inns further asserts because the express language of section 523H.2 is unambiguous, we may not turn to rules of statutory construction to aid us in determining the meaning of the section's language.

The defendants argue section 523H.2 is ambiguous because the literal import of the

language conflicts with the intent of the legislature. Therefore, the defendants argue, we may resort to rules of construction in interpreting the statute and such rules demonstrate the sentence in question merely states Iowa franchisors need not comply with the act with regard to out of state franchisees where the out of state franchisee operates a franchise outside of the state of Iowa.

We will not ordinarily resort to rules of statutory construction when the language of a statute is "so clear and free from obscurity that its meaning is evident from a mere reading." *Kruck v. Needles*, 259 Iowa 470, 476, 144 N.W.2d 296, 300 (1966); *accord Woodbury County v. City of Sioux City*, 475 N.W.2d 203, 205 (Iowa 1991); *State v. Green*, 470 N.W.2d 15, 18 (Iowa 1991); *State v. Perry*, 440 N.W.2d 389, 391 (Iowa 1989); *Casteel v. Iowa Dep't of Transp.*, 395 N.W.2d 896, 898 (Iowa 1986); *Lorentzen v. Deere Mfg. Co.*, 245 Iowa 1317, 1322, 66 N.W.2d 499, 502 (1954). However, even where statutory words have an ordinary and commonly understood meaning, we will search for an alternative meaning if adherence to the strict letter of the law would lead to an unreasonable, unjust, impracticable, or absurd outcome or where a literal reading would cause provisions to contradict. *Woodbury County*, 475 N.W.2d at 205; *Perry*, 440 N.W.2d at 391; *State v. Schlemme*, 301 N.W.2d 721, 723 (Iowa 1981); *Thompson v. Joint Drainage Dist. No. 3–11*, 259 Iowa 462, 468, 143 N.W.2d 326, 330 (1966); *Chicago, Burlington & Quincy R.R. v. Iowa State Tax Comm'n*, 259 Iowa 178, 183, 142 N.W.2d 407, 410 (1966).

A statute is ambiguous if reasonable minds could differ or be uncertain as to the meaning of the statute. *Green*, 470 N.W.2d at 18; *Schlemme*, 301 N.W.2d at 723. Ambiguity may arise in two ways: (1) from the meaning of particular words; or (2) from the general scope and meaning of a statute when all its provisions are examined. *Thompson*, 259 Iowa at 468, 143 N.W.2d at 330; *Chicago, Burlington & Quincy R.R.*, 259 Iowa at 183, 142 N.W.2d at 409–10.

Our ultimate goal in interpreting statutes is to determine and give effect to legislative intent. *Iowa Fed'n of Labor v. Department of Job Serv.*, 427 N.W.2d 443, 445 (Iowa 1988); *Schlemme*, 301 N.W.2d at 723. When a statute is ambiguous, in order to ascertain the legislature's intent, we look to the spirit of the statute as well as the words and give a "sensible, workable, practical, and logical construction." *State v. Bartusek*, 383 N.W.2d 582, 583 (Iowa 1986) (quoting *Hansen v. State*, 298 N.W.2d 263, 265–66 (Iowa 1980)); *accord Kroblin Refrigerated Xpress, Inc. v. Iowa Ins. Guar. Ass'n*, 461 N.W.2d 175, 178 (Iowa 1990). In order to arrive at a reasonable construction which will best affect rather than defeat the legislative purpose, we consider the following: (1) the language of the statute; (2) the objects sought to be accomplished; and (3) the evils sought to be remedied. *Green*, 470 N.W.2d at 18; *Iowa Fed'n of Labor*, 427 N.W.2d at 445. We may consider an ambiguous statute's legislative history and the applicable preamble or statement of policy. *De More v. Dieters*, 334 N.W.2d 734, 737 (Iowa 1983).

Section 523H.2 is ambiguous because reasonable minds could disagree as to the interrelationship of the section's first and last sentences. If the first sentence governs the last sentence, the last sentence merely provides chapter 523H does not apply to contracts between Iowa franchisors and out of state franchisees operating franchises outside of the state of Iowa. On the other hand, if the last sentence governs the first, the statute provides chapter 523H does not apply to *any* contracts between Iowa franchisors and out of state franchisees, even when an out of state franchisee operates a franchise within the borders of the state of Iowa.

To arrive at a proper interpretation of section 523H.2, we must look to the intent of the general assembly. A review of the legislative history, including the minutes of a September 27, 1991 meeting of the "Franchise Regulation Interim Study Committee," indicates the purpose of the legislature in enacting chapter 523H was to provide greater protection for franchisees by leveling bargaining power between franchisees and franchisors; promoting good faith business practices and fair dealing in franchise relationships; and protecting franchisees from fraud

and overreaching on the part of franchisors. The legislature clearly enacted the statute in response to specific complaints by franchisees that certain franchisors [1] have engaged in abusive acts including forcing new franchising agreements on franchisees by threats and intimidation many years prior to expiration of the existing agreements; replacing agreements that granted franchisees exclusive rights within an area with "site-specific" franchise agreements; and including within franchise contracts venue provisions which require lawsuits to be filed in locations prohibitively expensive to franchisees.

The preamble to the session law pursuant to which chapter 523 was enacted, 1992 Iowa Acts ch. 1134, provides in relevant part: "AN ACT relating to franchise agreements and their enforcement by establishing certain duties and limitations on franchisors, providing certain exemptions, and establishing a civil cause of action." This provides a further indication the legislature's intent behind the enactment of chapter 523 was to provide greater power to franchisees and place greater restrictions on the powers of franchisors. Nothing in the legislative history of this chapter supports the plaintiffs' contention that the general assembly intended to benefit Iowa franchisors in their dealings with out of state franchisees by excluding them from the reach of the chapter when the out of state franchisee operates a franchise within the borders of the state of Iowa. In addition, excluding Iowa franchisors from the reach of the chapter would frustrate rather than further the intent of the legislature in its attempt to place greater power in the hands of franchisees. We therefore reject Holiday Inns' proffered interpretation of section 523H.2.

■ Holiday Inns asserts if we hold the last sentence of section 523H.2 provides chapter 523 shall not apply to contracts between Iowa franchisors and out of state franchisees operating franchises outside of the State of Iowa, this will render the last sentence superfluous because it is well settled that state laws do not have application outside of the state's borders. Although the

State and Franchisee Association urge this meaning of the last sentence, they have not specifically responded to this contention of Holiday Inns other than to state that such an interpretation does not render the last sentence superfluous. It is true we will avoid an interpretation of a statute that renders a portion of it superfluous. *Woodbury County,* 475 N.W.2d at 206; *Casteel,* 395 N.W.2d at 898–99. However, it is not necessary for us to read an intentional loophole for Iowa franchisors into section 523H.2 in order to provide meaning for the section's last sentence.

The legislative history of chapter 523 indicates the legislature considered conflict of laws implications and franchise agreement choice of law and choice of forum provisions when enacting the chapter. Franchise agreements typically include a choice of law provision which states the law of a particular state shall govern the agreement. *See, e.g., Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 462, 105 S.Ct. 2174, 2176, 85 L.Ed.2d 528, 535 (1985); *Moses v. Business Card Express, Inc.,* 929 F.2d 1131, 1133 (6th Cir. 1991); *Burger King Corp. v. Austin,* 805 F.Supp. 1007, 1022 (S.D.Fla.1992); *Burger King Corp. v. Weaver,* 798 F.Supp. 684, 687 (S.D.Fla.1992); *Carlock v. Pillsbury Co.,* 719 F.Supp. 791, 808 (D.Minn.1989); *Roberts v. General Motors Corp.,* 138 N.H. 532, 643 A.2d 956, 962 (1994); *Instructional Sys., Inc. v. Computer Curriculum Corp.,* 130 N.J. 324, 614 A.2d 124, 133 (1992). Many jurisdictions enforce choice of law provisions unless they are contrary to the public policy of the jurisdiction or fail to meet other delineated criteria. *See, e.g., Lauritzen v. Larsen,* 345 U.S. 571, 588–89, 73 S.Ct. 921, 931–32, 97 L.Ed. 1254, 1270–72 (1953); *Milliken & Co. v. Eagle Packaging Co.,* 295 N.W.2d 377, 380 n. 1 (Minn.1980); *First Nat'l Bank v. Daggett,* 242 Neb. 734, 497 N.W.2d 358, 363 (1993); *Allied Adjustment Serv. v. Heney,* 125 N.H. 698, 484 A.2d 1189, 1191 (1984); *Instructional Sys.,* 614 A.2d at 133; *State ex rel. Meierhenry v. Spiegel, Inc.,* 277 N.W.2d 298, 299 (S.D.), *appeal dismissed,* 444 U.S. 804, 100 S.Ct. 25, 62 L.Ed.2d 17 (1979); *Bush v. Na-*

---

1. We note, as did the federal district court, neither McDonald's nor Holiday Inns were identified as franchisors who engaged in abusive practices. *McDonald's,* 822 F.Supp. at 608 n. 8.

*tional Sch. Studios, Inc.*, 131 Wis.2d 435, 389 N.W.2d 49, 53 (1986).

The Iowa appellate courts have not yet had the opportunity to rule on the validity of choice of law contractual provisions. However, the fourth sentence of section 523H.2 indicates such provisions may carry some weight in a court's determination of whether chapter 523 applies in a given situation. In addition, Iowa Code section 523H.3(1) holds choice of forum provisions are void if they attempt to restrict jurisdiction to forums outside of Iowa where chapter 523H would otherwise be enforceable. Generally under Iowa law, choice of forum provisions that would deprive Iowa courts of jurisdiction they would otherwise have are not legally binding in Iowa, but Iowa courts will consider them as one factor when determining whether to exercise jurisdiction. *Davenport Mach. & Foundry Co. v. Adolph Coors Co.*, 314 N.W.2d 432, 437 (Iowa 1982).

We hold the last sentence of section 523H.2, when considered in conjunction with the section's first and fourth sentences, provides chapter 523H shall not apply to contracts between Iowa franchisors and franchisees when the agreement is for the operation of a franchise outside of the state of Iowa. The only interpretation of "out-of-state franchisee" which will give a reasonable construction to section 523H.2 is a party operating a franchise outside of the state of Iowa. One effect of this provision is to keep parties from applying this chapter outside of the state of Iowa in instances in which a choice of law provision would be enforceable even if the agreement includes a choice of law provision which provides Iowa law shall govern the agreement. The last sentence also suggests that chapter 523H shall never apply to a contract between an Iowa franchisor and an out of state franchisee operating a franchise outside of the state of Iowa, even if conflict of laws analysis points to the application of Iowa law.

The effect of the fourth sentence is different from that of the last sentence. The fourth sentence has the effect of providing a choice of law provision may not override other factors when the franchise is operated within the applicable borders of the state of Iowa. For example, as a result of the interworkings of the third and fourth sentences of the section, a choice of law provision in a franchise agreement could not mandate the application of chapter 523H where the premises from which the franchise is operated is physically located within the state of Iowa; the franchise agreement includes marketing rights in or to the state of Iowa; and the franchisee's principal business office is physically located outside of the state of Iowa. In such a case, the provisions located in the third sentence would override the choice of law agreement.

To summarize, the effect of the last two sentences is as follows: due to the provisions of the fourth sentence of section 523H.2, a choice of law provision cannot be the *sole* reason the chapter applies to a franchise with operations within the state of Iowa, and due to the provisions of the last sentence, a choice of law provision may never mandate the application of the chapter to franchises being operated outside the state of Iowa. The last sentence is broader than the fourth and additionally provides that even if conflict of laws analysis should point to application of Iowa state law, chapter 523 shall never apply to a franchise operated beyond the borders of the state of Iowa. This interpretation gives purpose and meaning to every sentence in section 523H.2.

An illustration will help demonstrate application of our interpretation. Suppose an Iowa franchisor enters into a franchise agreement with a franchisee domiciled in Omaha for the operation of a franchise in Omaha near the Iowa border. The franchise agreement provides Iowa law shall govern the agreement and a dispute arises which results in consideration by a Nebraska court. The Nebraska court could reach the conclusion the choice of law provision and applicable Iowa law are not contrary to Nebraska public policy and Iowa has substantial contacts with the parties and agreement. *See Daggett*, 497 N.W.2d at 363. If the last sentence of section 523H.2 did not exist, the court could reasonably reach the conclusion that a consideration of all factors, including the agreement's choice of law provision, sug-

gested Iowa law should govern the dispute and chapter 523H should apply. A court could reasonably reach this conclusion because without the last sentence, the section does not provide that chapter 523H shall apply *solely* to franchises operated in Iowa and the fourth sentence seems to imply a choice of law provision could constitute one factor for a non-Iowa court to consider in determining whether to apply chapter 523. The last sentence of section 523H.2, however, demonstrates that under no circumstances may chapter 523 apply where an out of state franchisee is operating a franchise beyond the borders of the state of Iowa, regardless of conflict of law analysis or choice of law provisions.

We therefore find no merit in Holiday Inns' assertion that the interpretation we reach of section 523H.2 would render its last sentence superfluous. Holiday Inns' blanket contention that one state's statutes cannot apply to acts performed in jurisdictions outside of that state, while generally true, *see Powell v. Khodari–Intergreen Co.,* 334 N.W.2d 127, 131 (Iowa 1983), ignores conflict of law principles and the effect of contractual choice of law provisions. *See Milliken,* 295 N.W.2d at 380 (Supreme Court of Minnesota applying law of the state of New York).

III. Encroachment Provision

■ Iowa Code section 523H.6(1), "Encroachment," provides:

> Notwithstanding the terms, provisions, or conditions of an agreement or franchise, if a franchisor seeks to *establish a new outlet, company-owned store, or carry-out store within an unreasonable proximity of an existing franchise,* the existing franchisee, at the option of the franchisor, shall have either a right of first refusal with respect to the proposed new outlet, company-owned store, or carry-out store or a right to compensation for market share diverted by the new outlet.

(Emphasis added.) Holiday Inns argues the language of section 523H.6(1) is unambiguous and provides if a franchisor establishes a new outlet, company-owned store, or carry-out store within an unreasonable proximity of an existing franchise, the franchisor must comply with the section's provisions even if the new outlet, company-owned store, or carry-out store is located outside of Iowa's borders. Holiday Inns further asserts even if we find section 523H.6(1) unambiguous, we should hold the section does not place the same territorial restriction on new outlets, company-owned stores, or carry-out stores chapter 523H places on franchises. The defendants contend the statute is ambiguous and the legislature only intended the requirements of section 523H.6(1) to apply when a franchisor establishes new outlets, company-owned stores, or carry-out stores within the state of Iowa.

We hold that section 523H.6(1) is ambiguous because reasonable minds could disagree as to whether the legislature intended its provisions to apply when a new outlet, company-owned store, or carry-out store is established outside the borders of the state of Iowa. *See Green,* 470 N.W.2d at 18; *Schlemme,* 301 N.W.2d at 723. This ambiguity arises because, although section 523H.2 states the chapter only applies to franchises operated within the state of Iowa, the chapter does not define the terms "outlet," "company-owned store," or "carry-out store," and it is unclear whether the territorial limitation section 523H.2 places on franchises also applies to new outlets, company-owned stores, or carry-out stores. *See Green,* 470 N.W.2d at 18; *Thompson,* 259 Iowa at 468, 143 N.W.2d at 330; *Chicago, Burlington & Quincy R.R.,* 259 Iowa at 183, 142 N.W.2d at 409–10.

■ In seeking to determine the legislature's intent, we consider all parts of an enactment together and do not give any single or isolated portion undue importance. *General Elec. v. Iowa State Bd. of Tax Review,* 492 N.W.2d 417 (Iowa 1992). The applicability provision of chapter 523, section 523H.2, demonstrates an overwhelming intention on the part of the legislature to limit the application of the chapter to stores operated within the borders of the state of Iowa. Given this clear, manifest intent of the legislature, it would not be reasonable for us to interpret section 523H.6(1) to apply beyond the borders of Iowa when a franchisor seeks to establish a new outlet, company-owned

store, or carry-out store outside of the state of Iowa, but not when a franchisor seeks to establish a store firmly falling within the definition of "franchise" outside of the borders of the state of Iowa.

A consideration of all relevant provisions of chapter 523H convinces us the legislature did not intend the chapter to apply to any stores operated under the name of a franchisor, whether as a company-owned store or as a store operating under a franchise license, outside of the borders of the state of Iowa. We therefore hold that "unreasonable proximity" does not encompass any franchise-related stores, including new outlets, company-owned stores, or carry-out stores operated outside of the borders of the state of Iowa. Although this interpretation will not protect all franchisees within the state of Iowa from perceived abuses on the part of franchisors, we believe chapter 523 manifests the legislature's recognition of the extent to which it may lawfully regulate commercial activities affecting the State of Iowa.

IV.   Recent Legislation

The 76th General Assembly passed amendments, known as House File 126, to Iowa Code chapter 523H, "Franchises," that were approved by Governor Branstad on April 29, 1995 and became effective law on July 1, 1995. Iowa Code section 523H.2 was amended only in the last sentence. The amendment struck the words "out of state" and added after the word "franchises" the words "who operate franchises located out-of-state." We find this amendment clarifies the legislature's intent, is consistent with our interpretation in this opinion, and renders unchanged our answer to the certified question regarding this section.

The legislature also amended Iowa Code section 523H.6, "Encroachment," by striking the entire section and enacting in lieu thereof a new section. In considering the language of the new section 523H.6 with regard to the certified question on this section, we find the legislative intent is the same as we expressed it to be in this opinion and this new legislation would not affect our answer to the second certified question.

V.   Conclusion

Our answer to the certified question regarding Iowa Code section 523H.2 (1993) is "No."

Our answer to the certified question regarding Iowa Code section 523H.6 (1993) is "No."

**CERTIFIED QUESTIONS ANSWERED.**