**Ryan Jon VOSS, Appellee,**

v.

**IOWA DEPARTMENT OF TRANSPORTATION, MOTOR VEHICLE DIVISION, Appellant.**

No. 99–1448.

Supreme Court of Iowa.

Jan. 18, 2001.

Thomas J. Miller, Attorney General, David A. Ferree, Special Assistant Attorney General, and Kerry Anderson, Assistant Attorney General, for appellant.

Jeffrey L. Walters and Todd N. Klapatauskas of Reynolds & Kenline, L.L.P., Dubuque, for appellee.

TERNUS, Justice.

The issue is this case is whether Iowa Code section 321J.8 (1999)[1] requires that the implied consent advisory be reread before the administration of each chemical test when multiple tests are requested. The appellant, Iowa Department of Transportation (DOT), ruled that the advisory need not be given a second time when an additional test is administered. The district court's reversal of the agency's decision was affirmed on appeal by the Iowa Court of Appeals. This court granted further review. Upon our examination of the record and consideration of the arguments of the parties, we vacate the court of ap-

---

**1.** Voss's offense occurred in late 1998. In the 1998 session of the Iowa General Assembly, several significant changes were made to chapter 321J. *See* 1998 Iowa Acts ch. 1138, §§ 10–23. These amendments went into effect prior to the commission of Voss's crime. *See* Iowa Code § 3.7 ("All Acts ... passed at regular sessions ... shall take effect on the first day of July following their passage...."). They were codified in the 1999 Iowa Code. Therefore, to simplify our citation of the relevant statutes, all references will be to the 1999 Code.

peals' decision, reverse the judgment of the district court, and remand for entry of an order affirming the agency decision.

### I. *Background Facts and Proceedings.*

On October 31, 1998, an Iowa state trooper arrested the appellee, Ryan Voss, for operating while intoxicated. *See* Iowa Code § 321J.2 (defining offense of operating while intoxicated). The officer transported Voss to jail and, upon reaching the law enforcement center, made a written request for a breath test. *See id.* § 321J.6(1) (stating that person operating a motor vehicle under circumstances indicating a violation of section 321J.2 is deemed to have consented to a chemical test to determine alcohol or drug content). The trooper read the implied consent advisory to Voss at 1:21 a.m., and Voss then signed the written consent. A subsequent intoxilyzer test showed an alcohol level of .101.

Shortly after testing Voss's breath, the trooper was informed that during an inventory search of Voss's vehicle a marijuana pipe was discovered. Additionally, a search of Voss conducted upon his admission to jail yielded a plastic bag containing greenish-brown material that looked and smelled like marijuana, as well as several small butts or "roaches" from marijuana cigarettes. Believing that Voss may be under the influence of a drug other than alcohol, the trooper requested a urine specimen from Voss at 1:50 a.m. *See id.* § 321J.6(3) (requiring officer to request a blood or urine test if officer "has reasonable grounds to believe that the person was under the influence of a controlled substance, a drug other than alcohol, or a combination of alcohol and another drug ... even after another type of test has been administered"). The officer did not reread the implied consent advisory to Voss, but did answer Voss's questions regarding the requested test. Voss consented to the test, and later test results were positive for tetrahydrocannabinol (THC).

Upon receiving the positive test result, the DOT issued a notice revoking Voss's license for one year. *See id.* § 321J.12 (requiring one year revocation for chemical test showing presence of a controlled substance or other drug where person has had a previous revocation under chapter 321J). Voss contested the revocation, in part based on the fact that the advisory had not been reread to him prior to his consent to the urine test. The administrative law judge (ALJ) ruled in favor of Voss on this issue, and rescinded the department's revocation of Voss's driver's license. The DOT filed an internal appeal, resulting in a reversal of the ALJ's decision and a reinstatement of Voss's revocation.

Voss sought judicial review in the district court. The district court ruled that the trooper was required to readvise Voss of the consequences of refusing to consent to the urine test and the officer's failure to do so required rescission of the revocation. This decision was affirmed by the court of appeals. We granted further review.

### II. *Scope of Review.*

■ Our review of the DOT's decision to revoke a driver's license is governed by Iowa's Administrative Procedure Act, chapter 17A. *See Scott v. Iowa Dep't of Transp.*, 604 N.W.2d 617, 619 (Iowa 2000).

> Applying the standards for review of agency action found in section 17A.19(8), we determine whether our conclusions are the same as those made by the district court. If they are, we affirm. If our conclusions are not the same, and we decide the district court has incorrectly applied the law, we must reverse.

*Id.*

### III. *Discussion.*

■ The implied consent advisory is required by Iowa Code section 321J.8, which states:

> A person who has been requested to submit to a chemical test shall be advised by a peace officer of the following:

1. If the person refuses to submit to the test, the person's driver's license ... will be revoked by the department as required by and for the applicable period specified under section 321J.9.

2. If the person submits to the test and the results indicate the presence of a controlled substance or other drug, or an alcohol concentration equal to or in excess of the level prohibited by section 321J.2 or 321J.2A, the person's driver's license ... will be revoked by the department as required by and for the applicable period specified under section 321J.12.

Iowa Code § 321J.8. Our task in this appeal is to determine whether the legislature intended that this advisory be repeated with each alternate test requested. *See State v. Green,* 470 N.W.2d 15, 18 (Iowa 1991) (in construing statutes, the court "tr[ies] to find and give effect to legislative intent").

"If the statutory language is plain and the meaning is clear, we do not search for the legislative intent beyond the express terms of the statute." *Horsman v. Wahl,* 551 N.W.2d 619, 620–21 (Iowa 1996). If a statute is ambiguous, however, the court will resort to rules of statutory interpretation to ascertain the meaning of the statute. *See Green,* 470 N.W.2d at 18. "Ambiguity exists if reasonable minds may differ or may be uncertain as to the meaning of the statute." *Id.* In those cases,

[t]o resolve ambiguity and ultimately determine legislative intent, [the court] consider[s] (1) the language of the statute; (2) the objects sought to be accomplished; (3) the evils sought to be remedied; and (4) a reasonable construction that will effectuate the statute's purpose rather than one that will defeat it.

*Id.* (citations omitted).

Voss contends that the language used in the statute clearly indicates that the advisory must be given before each test. He relies on the language, "[a] per-

son who has been requested to submit to *a* chemical test shall be advised by a peace officer of the following." Iowa Code § 321J.8 (emphasis added). Voss argues that the article "a" in the phrase "a chemical test," because of its "singular" connotation, expressly reveals the legislature's intent that each request for a chemical test be immediately preceded by a reading of the advisory.

The use of the article "a" is not, however, as limited as Voss would have it.

*The word "a" has varying meanings and uses.* "A" means "one" or "any," but less emphatically than either. It may mean one where only one is intended, or it may mean any one of a great number. It is placed before nouns of the singular number, denoting an individual object or quality individualized.

*The article "a" is not necessarily a singular term;* it is often used in the sense of "any" and is then applied to more than one individual object.... [T]he meaning depends on context.

*Black's Law Dictionary* 1 (6th ed.1990) (emphasis added) (citations omitted). Thus, contrary to Voss's argument, the use of the article "a" does not necessarily mean the implied consent advisory must be readministered with each test requested.

We think the meaning of the statute is unclear because, in reviewing the statutory language, we are uncertain whether the advisory must be read only once, or whether it must be repeated with each request for a chemical test. Therefore, we look to the purpose of the statute and seek a reasonable construction that will advance that purpose.

When a person has been asked to submit to a chemical test, section 321J.8 requires that the officer must advise the person of the consequences of refusing to take the test and the consequences of a positive test result, including the potential periods of revocation. Although the rationale for this requirement is not stated in the statute, and no case directly addresses

this issue, the district court in this case clearly stated the obvious reason behind the requirement:

> The clear intent of section 321J.8 is to provide a person who has been required to submit [to] a chemical test a basis for evaluation and decision-making in regard to either submitting or not submitting to the test. This involve[s] a weighing of the consequences if the test is refused against the consequences if the test reflects a controlled substance, drug, or alcohol concentration in excess of the "legal" limit. This is a determination that will frequently be made without benefit of counsel by the person of whom [the] request is made. . . .

The question that must be answered then is whether this intent was thwarted by the officer's failure to repeat the advisory when a second test was requested of Voss. The district court determined that the statutory purpose was not accomplished in the absence of rereading the advisory because the additional test requested by the officer was "a totally different test, differently administered, and for a different substance." Under these circumstances, the court reasoned, "a layman would not know the periods of revocation are the same for the urine test as for the breath test unless reconfirmed or readvised of the revocation period by the officer."

A review of the implied consent advisory given to Voss, however, undermines the validity of the court's reasoning. The following advisory was read to Voss:

> *Refusal to submit to the withdrawal of a body specimen for chemical testing will result in revocation of your privilege to operate a motor vehicle for one year* if you have not previously been revoked within the previous twelve years under the implied consent or drunk driving laws of this state, *or for two years* if you have one or more revocations within the previous twelve years. If you are under age 18, the revocation will be for the above periods, or until you reach age 18, whichever is longer.
>
> *Refusal to submit to a blood or urine test for drugs other than alcohol or a combination of alcohol and another drug constitutes a refusal and the above mentioned revocation periods apply.*
>
> *If you consent to chemical testing and* the test results indicate an alcohol concentration of ten hundredths or more, or if *the test results indicate the presence of a controlled substance* or other drug or a combination of alcohol and another drug in violation of 321J.2, *the department shall revoke your privilege to operate a motor vehicle for a period of 180 days* if you have no revocation within the previous twelve years under the drunk driving or implied consent law, *or for one year* if you have one or more previous revocations under those provisions.

(Emphasis added). The advisory given to Voss clearly informed him of the applicable periods of revocation for any kind of chemical test, whether the test was to detect the presence of alcohol, a controlled substance or other drug, or some combination of alcohol and another drug. Thus, Voss was, in fact, advised of the consequences of a refusal to submit to a urine test for drugs and the consequences of a test result indicating the presence of drugs. Moreover, the trooper answered Voss's specific questions concerning the second request for a chemical test, and there is no evidence in the record that Voss was confused about the consequences of his decision.

Under these circumstances, we think the statutory purpose was accomplished without the necessity of repeating the same information prior to the trooper's request for a second test. *Cf. Green,* 470 N.W.2d at 18 (stating that "when the purpose of the requirement [of the implied consent law] has been substantially met," evidence of test results has been allowed). No useful purpose would be served by a rigid requirement that the implied consent advi-

sory be reread when multiple chemical tests are requested.

We hold, therefore, that the agency correctly ruled that the trooper had complied with the procedural requirements of section 321J.8. *Cf. State v. Fortman,* 493 N.W.2d 599, 601 (Minn.Ct.App.1992) (holding that officer was "not required to reread the entire implied consent advisory when an alternative test is necessary" where approximately one hour had elapsed since the first reading of the advisory); *Hansen v. Comm'r of Pub. Safety,* 393 N.W.2d 702, 705 (Minn.Ct.App.1986) (same). Consequently, Voss's license was properly revoked. Accordingly, we vacate the court of appeals' contrary decision and reverse the district court's judgment rescinding the revocation. We remand for entry of an order affirming the agency's decision.

**COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED.**