**IOWA DEPARTMENT OF TRANSPORTATION,**
Plaintiff,

v.

**IOWA DISTRICT COURT FOR DUBUQUE COUNTY,**
Defendant.

No. 02–0824.

Supreme Court of Iowa.

Oct. 8, 2003.

Thomas J. Miller, Attorney General, and Mark Hunacek, Assistant Attorney General, for plaintiff.

Dan McClean of McClean Law Office, Dyersville, for defendant.

STREIT, Justice.

Thomas Naber wants the DOT to run his six-year driver's license revocation for his third conviction of OWI concurrently with a prior revocation for refusing a chemical test. The district court ordered the DOT to do so, which Naber claims was a result of a plea agreement with the county attorney. The DOT filed a writ of certiorari, in which it alleges the district court has no authority to make such an order. The defendant contends the district court can do so, and that the interests of justice require us to uphold its order in this case. We sustain the writ of certiorari.

## I. Background and Facts

In March 2001, Dyersville police arrested Thomas Naber for operating a motor vehicle while intoxicated (OWI), in violation of Iowa Code section 321J.2 (2001). After his arrest, Naber refused to take a breath test. *See* Iowa Code § 321J.6. In August 2001, the Iowa Department of Transportation (DOT) revoked Naber's driver's license for two years, on account of his failure to submit to the test. *See* Iowa Code §§ 321J.6, 321J.9.

In April 2002, Naber pled guilty to second-offense OWI. Because Naber had two previous convictions for OWI, the district court ordered the DOT to immediately revoke his driving privileges for six years. *See id.* § 321J.4(4). The court also ordered that the six-year revocation should run concurrently from the start of the prior administrative revocation for refusing to take the chemical test. The latter revocation had begun nearly nine months earlier.[1] The district court's order was apparently the result of negotiations between Naber and the assistant county attorney. There is, however, no record of the plea negotiations before us.

The DOT filed a writ of certiorari, claiming the district court, in dating the six-year revocation to commence with the start of the test refusal revocation,[2] acted illegally. This court granted certiorari.

---

1. The order stated: "The Iowa Department of Transportation shall immediately revoke the defendant's privilege to operate motor vehicles in the State of Iowa for a period of six years, concurrent with suspension by DOT which began 8–1–01." We have examined the district court file, however, and Naber's driving record, found therein, indicates the revocation for test refusal began on August 8, 2001. The parties did not raise this discrepancy.

2. Iowa Code section 321J.4(4) imposes a six-year revocation and forbids the issuance of a temporary restricted permit during the first

## II. Scope of Review

■ In a certiorari action, we review the actions of the district court for errors at law. *Iowa Dep't of Transp. v. Iowa Dist. Ct. for Johnson County*, 570 N.W.2d 461, 462 (Iowa 1997). "Certiorari is appropriate when a trial court is alleged to have exceeded its jurisdiction or to have acted illegally." *Iowa Dep't of Transp. v. Iowa Dist. Ct. for Blackhawk County*, 503 N.W.2d 411 (Iowa 1993).

## III. The Merits

The DOT claims the district court acted illegally when it dated Naber's mandatory six-year revocation for his third conviction of OWI to run concurrently with the start of a prior administrative revocation for failing to take a required chemical test. Naber disagrees, and argues that justice requires the plea agreement be enforced; defendants, he claims, must be able to depend on the word of the county attorney in plea agreements. Naber also contends a ruling to the contrary would infringe upon his rights to discovery and trial.

Iowa Code section 321J.4(4) states, in relevant part, that

*Upon a plea or verdict of guilty* of a third or subsequent violation of section 321J.2, the court shall order the department to revoke the defendant's driver's license or nonresident operating permit for a period of six years. The defendant shall not be eligible for a temporary restricted license for at least one year *after the effective date of the revocation.*

Iowa Code § 321J.4(4) (emphasis added). Although the DOT argues the plain language of Iowa Code section 321J.4(4) does not permit a court to date the six-year revocation to begin with a previous revocation for a chemical test refusal, we disagree. The first words of the statute ("[u]pon a plea or verdict of guilty") only mandate that the court wait until the defendant is determined guilty, either by plea or verdict, before ordering the DOT to revoke the defendant's license. It does not, by its terms, clearly prohibit retroactive dating of the six-year ban. Moreover, the phrase "after the effective date of the revocation" only forbids the defendant from receiving a temporary restricted license until a year after the effective date of the revocation—whenever that may be.[3]

■ The plain language of Iowa Code section 321J.4(4) does not, on its face, put any restrictions upon when the district court may make the revocation effective. A statute is ambiguous when reasonable minds may differ on its proper interpretation. *See Albrecht v. Gen. Motors Corp.*, 648 N.W.2d 87, 90 (Iowa 2002) (citing *Mid-*

---

year. The parties assume section 321J.4(4) thus imposes two revocations, a "six-year revocation" and a "one-year hard-revocation." This is a mistaken assumption. The so-called "one-year hard-revocation" is merely a further condition which is placed upon the six-year revocation—namely, that a temporary restricted permit shall not be granted during the first year of the six-year revocation. In what follows, then, we do not refer to two distinct revocations, but rather only to "the six-year revocation" or "the section 321J.4(4) revocation."

**3.** The language of section 321J.4(4) conflicts, for example, with a predecessor of our habitu-

al offender statute, which required a revocation to run "from the date of judgment." Iowa Code § 321.560 (1977). Thus our dicta in *State v. Onstot*, 268 N.W.2d 219 (Iowa 1978), a case involving that statute, does not apply. In *Onstot*, although we rejected, on other grounds, a challenge to the district court's retroactive dating of a habitual offender revocation, we criticized the district court's selection of a date in the past from which a revocation should run as an "attempt ... to frustrate the clear demands of the statute." *Onstot*, 268 N.W.2d at 220. The language of section 321J.4(4), however, contrasts sharply with section 321.560 (1977).

*west Auto. III, LLC v. Iowa Dep't of Transp.*, 646 N.W.2d 417, 425 (Iowa 2002) (recognizing "[a]mbiguity may arise from specific language used in a statute or when the provision at issue is considered in the context of the entire statute or related statutes")). Because reasonable minds may disagree on the issue in the present case—namely, whether the district court had the authority to date Naber's six-year suspension to run concurrently from the start of his prior administrative revocation for a chemical test refusal—Iowa Code section 321J.4(4) is ambiguous.

Nevertheless, the district court acted illegally in dating the six-year revocation to commence with the start of the test refusal revocation. The district court's action, in effect, impermissibly "credits" Naber's prior administrative revocation towards his six-year revocation. The district court does not have the statutory authority to grant such a credit.

In *State v. Tuitjer*, 385 N.W.2d 246 (1986), we reached a similar conclusion. In *Tuitjer*, the district court ordered the DOT to credit two years of previously served license revocations towards the court's imposition of a mandatory two-to-six-year revocation under the habitual offender statute. As in the present case, all of the revocations at issue in *Tuitjer* arose from the same set of facts. In *Tuitjer*, after examining the purposes of the various statutes, we stated that even in the absence of clear statutory language "the [legislative] objectives of our several license-revocation statutes ... would prevent habitual offenders from receiving credit for revocations that attend individual drunk driving incidents." *Tuitjer*, 385 N.W.2d at 248. Recognizing that "[s]everal Iowa statutes provide for the suspension or revocation of the driving privileges of persons who have been arrested for or convicted of OWI offenses," we determined

"[t]he effect of the credit would be to reduce the period of license revocation below the two-year statutory minimum prescribed for habitual offenders," and that the district court lacked the authority to do so. *Id.* at 246.

■ As in *Tuitjer*, Naber's license was revoked under two distinct provisions of the Iowa Code—for two distinct reasons (although arising out of the same incident). Each provision has a different legislative purpose. For failing to submit to a chemical test, Naber's license was administratively revoked under our implied consent law. *See* Iowa Code §§ 321J.6, 321J.9. We have previously stated "[t]he underlying purpose of our implied consent law is to prevent highway deaths due to intoxicated drivers." *State v. Green*, 470 N.W.2d 15, 18 (Iowa 1991). For his third OWI conviction, Naber's license was revoked for six years. *See* Iowa Code 321J.4. On the other hand, [t]he purpose of the license revocation provision in section 321J.4 is to protect the public by providing that drivers who have demonstrated a pattern of driving while intoxicated be removed from the highways. *State v. Moore*, 569 N.W.2d 130, 132 (Iowa 1997) (citing *State v. Blood*, 360 N.W.2d 820, 822 (Iowa 1985)). The section 321J.4(4) revocation is therefore specifically designed to protect the public from the especially grave danger posed by recidivist drunk drivers.

Naber argues the legislature's intent to protect the citizenry is satisfied so long as the length of each revocation is enforced. Naber's argument fails once we recognize the different purposes of the two revocations. To retroactively permit the section 321J.4 and section 321J.6 revocations to start at the same time, gives, in effect, the defendant "credit" for his prior revocation, even though the purposes of the two provisions differ and in the absence of any statutory authority to do so. In sacrificing

the legislative desire of section 321J.4(4) to protect the public from recidivist drunk drivers, the district court has—by about nine months—illegally reduced the statutory mandate of the legislature to revoke Naber's license for six years. In the present case, as in *Tuitjer*, the district court "effectively nullified" an express mandate of the Code. *See Tuitjer*, 385 N.W.2d at 247; Iowa Code § 321J.4(4) (the court "*shall* order the department to revoke the defendant's driver's license . . . for a period of six years" (emphasis added)).

■ Naber argues justice requires us to uphold the terms of the plea agreement. Defendants, Naber claims, must be able to rely upon the word of the county attorney. Because there is no record of the plea proceedings before us, we refuse to speculate on its terms. Even if there was such an agreement, we have previously held that the county attorney has no authority to negotiate for the DOT. *Iowa Dep't of Transp. v. Iowa Dist. Ct. for Bremer County*, 534 N.W.2d 457, 460–61 (Iowa 1995). Any plea agreement entered into between the county attorney and Naber, altering a mandatory license revocation, cannot bind the DOT. *See id.*

■ Lastly, Naber contends that overturning the plea bargain will, in effect, take away his rights to discovery and trial. Naber argues his license will be revoked twice on the same set of facts, and, if he had not asserted his rights to discovery and trial (consuming part of the thirteen months from arrest to plea), his revocations, both beginning immediately, would have resulted in less cumulative revocation time. Naber's argument, however, fails to recognize that "license revocation proceedings are separate and distinct from criminal charges arising from the same incident, and [e]ach action proceeds independently of the other." *Heidemann v. Sweitzer*, 375 N.W.2d 665, 668 (Iowa 1985) (citations omitted). As we have just pointed out, each revocation serves a different legislative purpose, and results from a different prohibited behavior. That better consequences may ensue from pleading guilty sooner rather than later does not necessarily result in a deprivation of a defendant's rights to trial and discovery; this is not a case where the statute expressly authorizes additional revocation time merely because a defendant exercises his right to discovery and trial. Naber will not serve more revocation time than either section of the statute authorizes. The statute, however, does not authorize the district court to date a mandatory third-offense OWI license revocation to retroactively run concurrently with the start of a prior administrative revocation for a chemical test refusal. The district court acted illegally when it did so. The writ, therefore, must be sustained.

## IV.  Conclusion

The district court acted illegally when it dated Naber's six-year revocation for his third conviction of OWI to run concurrently with the start of a prior administrative revocation for failure to take a chemical test. Although Iowa Code section 321J.4(4) is ambiguous, there is no statutory authority for the district court's action, which is, in effect, an impermissible "credit" for a prior administrative revocation. Nor can any alleged plea agreement between Naber and the county attorney bind the DOT. Lastly, because our interpretation of section 321J.4(4) does not infringe upon Naber's rights to discovery and trial, the writ must be sustained.

**WRIT SUSTAINED.**