CADY, Chief Justice
(concurring specially).
I concur in the' opinion of the court. First, I agree the officer permissibly stopped Dale Dean Pettijohn Jr. after observing a violation of Iowa Code section 462A.12(1) (2013). See State v. Vance, 790 N.W.2d 775, 780 (Iowa 2010). Second, I agree the search of Pettijohn’s breath was constitutional under the United States Supreme Court’s interpretation of the search-incident-to-arrest exception to the warrant requirement- of the Fourth Amendment. See Birchfield v. North Dakota, 579 U.S. -, -, 136 S.Ct. 2160, 2184, 195 L.Ed.2d 560 (2016). Third, I agree the search was not justified under our independent interpretation of the search-incident-to-arrest exception to the warrant requirement of Iowa Constitution article I, section 8. See State v. Gaskins, 866 N.W.2d 1, 16 (Iowa 2015). And, fourth, I agree Pettijohn’s consent to the search was coerced by the State’s threat of penalties authorized by Iowa Code section 462A.14B(2)(6)(1)-(3). See State v. Baldon, 829 N.W.2d 785, 802-03 (Iowa 2013). I write separately because I would decide this case solely on these grounds.
Consent is one of the well-recognized exceptions to the constitutional requirement that searches must be conducted pursuant to a warrant. See id. at 791. Consent, however, can only be used as an exception if it was voluntary. See id. at 792.
In this ease, it is unnecessary to analyze the totality of the circumstances to determine if Pettijohn voluntarily consented to chemical testing. This analysis is unnecessary because the statutory implied-consent scheme for boating in Iowa is inherently coercive and cannot be used under the Iowa Constitution to justify a warrantless withdrawal of blood, breath, or urine based on consent.
Implied-consent. laws were enacted in the context of motor vehicle operation to secure cooperation with breath tests. See Birchfield, 579 U.S. at -, 136 S.Ct, at 2168-69. “They provided that cooperation with [blood-alcohol content] testing was a condition of the privilege of driving on state roads and that the privilege would be rescinded if a suspected drunk driyer refused to honor that condition.” Id. at -, 136 S.Ct. at 2169; see also State v. Knous, 313 N.W.2d 510, 512 (Iowa 1981) (“[T]he implied consent statute is based.on the premise ‘that a driver impliedly agrees to submit to a test in return for the privilege of using the public highways.’” (quoting State v. Hitchens, 294 N.W.2d 686, 687 (Iowa 1980))). In other words, implied-consent laws do not mandate consent to testing, but require the driver to make a choice when suspected of operating a motor vehicle. while under the influence of alcohol or a controlled substance: either submit to testing pursuant to the implied consent previously given in exchange for the privilege of driving, or revoke it and lose the privilege. In essence,' if a driver refuses testing, the entire arrangement is revoked.
In Baldón, we analogized the consent given in an agreement with the state to a contract with the state. 829 N.W.2d at 791. *40 In doing so, we recognized that the decision to enter into a contract can “involve a choice between two unpalatable alternatives, which does not defeat the voluntariness of the consent.” Id. at 801. Yet, we also recognized there may be some situations in which coercion does surface to defeat the consent. See id. (“[T]his proposition does not mean a choice between two unpalatable alternatives can never be coercive.”).
Under the implied-consent law for boating in Iowa, if a boat operator revokes the implied consent to testing, so, too, does the state revoke the corresponding privilege to operate a boat. See Iowa Code § 462A.14B(2)(a). In other words, the operator is simply placed back in the position occupied before being given the privilege to operate a boat. This component of the implied-consent law for boating is not coercive in any way. Instead, the choice presented to a boat operator relates to the benefit exchange that allowed the person to operate a boat. If the person subsequently decides to withhold the implied consent given to the state, the state is, in turn, entitled to withhold the benefit bestowed. These circumstances do not present coercion, but a return of the parties to their original positions.
However, under Iowa’s implied-consent law for boating, the consequences of withholding consent are not limited to the loss of the privilege to operate a boat. The law also imposes a mandatory civil penalty of at least $500 as punishment for the refusal to submit to chemical testing. See Iowa Code § 462A.14A(4)(p)(1) (“A refusal to submit to the test is punishable by a mandatory civil penalty of five hundred dollars to two thousand dollars....” (Emphasis added.)); see also id. § 462A.14B(2)(6)(1)-(3) (requiring the court impose the applicable penalty). The threat of this punishment necessarily means the subsequent consent was obtained by coercion and was thus involuntary.
In the context of consent, the $500 penalty is coercive for two central reasons. First, the law requires an officer to tell the boat operator of the mandatory fine prior to deciding whether to give consent to chemical testing or to refuse chemical testing. See id. § 462A.14A(4)(g)(1). Thus, the person is told the fine is not only an additional consequence, but a consequence specifically conditioned on withholding consent. See id. § 462A.14A(4)(p,)(1)-(2). Furthermore, the consequence involves the loss of substantial property. See id. § 462A.14B(2)(b)(1)-(3). Second, the penalty is coercive because the court imposes it only if the operator revokes consent. See id. The court does not impose the penalty as a consequence of a test result in excess of the legal limit. Cf. id. § 462A.14(2)(a)-(e) (identifying the penalties for operating a boat while intoxicated).
Under these circumstances, the $500 civil penalty serves primarily, if not entirely, to pressure the person to consent to testing. We simply cannot ignore what the statute actually seeks to accomplish or fail to acknowledge how the penalty interferes with the voluntariness of the decision the boat operator must make when suspected of operating while intoxicated. The statute, plain and simple, is inherently coercive. Any person faced with the prospect of being required to pay $500 unless consent is given would feel the coercion.
Of course, the boating statute can be written to avoid the element of coercion. The implied-consent law for motor vehicles is an example. This law avoids the use of coercion because it only requires an officer to advise a driver that the department of transportation will revoke the driver’s license to operate the motor vehicle if consent is not given and that the same will occur if consent is given and the test re *41 veals the presence of alcohol or a controlled substance in excess of statutory limits. Id. § 321J.8(1)(a)-(b); see also Voss v. Iowa Dep’t of Transp., 621 N.W.2d 208, 212 (Iowa 2001) (“The clear intent of [these advisements] is to provide a person who has been requested to submit [to] a chemical test a basis for evaluation and decision-making in regard to either submitting or not submitting to the test.”). In this way, the only consequence injected into the decision to consent or refuse is losing the benefit of the bargain that resulted in obtaining the privilege to drive. See Iowa Code § 321J.9(1)(a)-(b).
It is true that the law also requires the imposition of a $200 civil fine “if the department revokes a person’s driver’s license” pursuant to the implied-consent law. Id. § 321J.17(1). However, unlike the penalty imposed for refusing consent to testing while boating, this penalty is not imposed just as a punishment for refusing the test. Instead, the department of transportation imposes the fine when it is required to revoke a license for any reason under the statute. See id. For example, the department also imposes the fine when a license is revoked for testing in excess of statutory limits. See id. §§ 321J.12(1), .17(1). Thus, the $200 penalty under the implied-consent law for motor vehicles relates to the administrative process of revoking and reinstating a license, unlike the implied-consent law for boating. In fact, the department imposes many additional consequences of license revocation, see generally id; § 321J.17(l)-(3) (requiring, among other things, a driver install an ignition interlock device and attend substance abuse evaluation and treatment), but the only consequence directly relating to the refusal to consent is the revocation itself.
Thus, the legislature can rewrite the implied-consent law for boating to remove the element of coercion and maintain the implied-consent procedure. Furthermore, operating a boat while intoxicated will still be a crime in Iowa and can still be prosecuted. Actually, consented-to breath testing will be available to aid in any prosecution, and boaters can be prosecuted for operating while intoxicated without the aid of a chemical test. The only difference without the power of implied consent is that the refusal to consent to chemical testing will not result in the loss of boating privileges or the imposition of a penalty, at least until the law is changed so that it is comparable to the implied-consent law for motor vehicles.
In Baldón, a “fundamental! ]” reason we held parolee consent searches pursuant to a parole agreement invalid was because the searches were “conceptually detached from the concept of bargaining.” 829 N.W.2d at 802. The monetary penalty here is similarly unrelated to the privilege sought to be obtained. It is coercive, and thus it is the State’s burden to present additional evidence in the record to reveal Pettijohn voluntarily consented to the search. See id. The only evidence in this case is that Pettijohn read and understood the implied-consent warning required by statute. As discussed above, that statute was coercive and therefore could not establish his consent.
In a court system, judges are required to call a strike a strike and a ball a ball. The implied-consent law for boating was written to coerce consent to chemical testing. There is no way around calling this strike a strike. While some will see the decision as creating controversy, it actually identifies the value of a fair and impartial court system and upholds the integrity of the process of justice. Perhaps even more important, the decision upholds the constitutional values Iowans prize. For these *42 reasons, I concur in the opinion of the court.